```
Court Name: UNITED STATES DISTRICT COURT
Division: 3
Receipt Number: 34683021261
Cashier ID: lbreeden
Transaction Date: 05/29/2013
Payer Name: McCANDLISH HOLTEN
----------------------------------
CIVIL FILING FEE
 For: McCANDLISH HOLTEN
 Amount:     $400.00
----------------------------------
CHECK
 Check/Money Order Num: 72766
 Amt Tendered: $400.00
----------------------------------
Total Due:       $400.00
Total Tendered:  $400.00
Change Amt:      $0.00

Case #3:13-cv-00345
```



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CARMAX AUTO SUPERSTORES, INC., a Virginia corporation, and CARMAX BUSINESS SERVICES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>EVOX PRODUCTIONS, LLC, a Delaware limited liability company,<br><br>Defendant. | Civil Action No. 3:13CV345<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiffs CarMax Auto Superstores, Inc. and CarMax Business Services, LLC (collectively "CarMax") for its Complaint against Defendant eVox Productions, LLC ("eVox" or "Defendant") allege as follows:

## NATURE OF THIS ACTION

1. For six years, Defendant eVox accepted a revenue share of payments for a license to use images that CarMax had purchased and regularly renewed through eVox's reseller, Transtock, Inc. ("Transtock"). When, CarMax sought to renew its license in 2013, Transtock advised that eVox had terminated Transtock's reseller relationship, and CarMax approached eVox to renew the license directly. Instead of renewing the license in good faith, eVox insisted that it be paid hundreds of times the license fee as "statutory damages" for the license having expired before eVox agreed to renew it. Although CarMax disabled the images upon eVox's demand, by this action CarMax seeks a declaration that it has not infringed eVox's copyrights, and that eVox is not entitled to the statutory damages it has demanded.

2. Specifically, CarMax seeks a declaration from this Court (i) that CarMax's license received from Transtock during its representation of eVox was valid and enforceable throughout its term, and that eVox is estopped to dispute that license; (ii) that CarMax did not infringe any of eVox's alleged copyrights in the images of vehicles allegedly owned by Defendant eVox and used by CarMax (the "Images") because of eVox's conduct, communication and acts constituting acquiescence or estoppel; (iii) that certain registrations submitted by eVox to the United States Copyright Office were not registered within ninety (90) days of the date of first publication as necessary to permit any award of statutory damages; (iv) that merely maintaining many of the Images on a CarMax server, without actual distribution, display, making derivative works, or reproduction during any purportedly unlicensed period, did not infringe; (v) that only at most one statutory damages award is available per copyright registration, regardless of whether registration covers multiple images; and (vi) that any infringement by CarMax was innocent, as CarMax lacked intent to infringe and had a demonstrated history of licensing the Images.

## JURISDICTION AND VENUE

3. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 and the Copyright Act, 17 U.S.C. § 101 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (jurisdiction over copyright actions).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims herein occurred in this judicial district, including the acts of CarMax and its employees in administering the website and the presence of marketing collateral that is accused by eVox of infringing. eVox is subject to personal jurisdiction in this district by virtue of its transacting, doing and soliciting business and directing threats in and at this district, including without limitation its sales of licenses to this district, the

solicitation of business from CarMax in this district, its negotiations toward a potential license with CarMax in this district, its threats of litigation and statutory damage claims directed against CarMax in this district, and its authorization of Transtock to license eVox images to CarMax knowing those images to be utilized in this district.

## PARTIES

5. Plaintiff CarMax Auto Superstores, Inc. is a corporation organized and existing under the laws of the State of Virginia which operates CarMax superstores for sale of used vehicles. Plaintiff CarMax Business Services, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with responsibility for the website at www.carmax.com. Both companies have their principal place of business at 12800 Tuckahoe Creek Parkway, Richmond, Virginia, where, in conjunction with their parent company, CarMax, Inc., they employ over one thousand people, including those responsible for CarMax's use of the Images, implementation of the CarMax website and store displays. CarMax was first established with the purpose of offering a better way to buy used cars. Through CarMax's website prospective buyers can search for used cars available for sale across the country.

6. On information and belief, defendant eVox is a Delaware limited liability company with its principal place of business at 2363 E. Pacifica Place, Building 305, Rancho Dominguez, California. eVox licenses stock photographs of vehicles.

7. On information and belief, eVox has engaged in business in Virginia and within this judicial district, by *inter alia,* soliciting, distributing or authorizing the distribution of images, and selling or authorizing the sale of licenses of such images in this judicial district.

3

## FACTUAL ALLEGATIONS

### Transtock/eVox Reseller Agreement

8. On information and belief, eVox and Transtock Inc. ("Transtock") entered into a reseller agreement entitled "eVox Reseller Agreement" on or around September 25, 2007, pursuant to which eVox provided certain images of vehicles to Transtock for Transtock to license to end-users in efforts to maximize license fees. On information and belief, that agreement authorized Transtock to represent eVox in licensing of images to end users, for which Transtock passed through a portion of the license revenues received, and was automatically extended by its terms into 2012. The eVox Reseller Agreement specified that "CarMax is an existing client of Distributor [Transtock]."

9. Until February 2013, CarMax had not been advised of the eVox Reseller Agreement, its terms or any expiration date.

### The CarMax Website

10. The CarMax website is designed primarily to facilitate the purchase of used cars and to allow users to search for vehicle availability in specific geographical locations. The images in most portions of CarMax's website, including those where individual cars are identified for sale, were and continue to be primarily images shot by CarMax's merchandising team depicting the particular individual vehicles that are available for purchase.

11. CarMax's website also contains a "research" portion that provides data on different cars by make, model and year. In 2007, CarMax decided to add to the research portion a gallery of stock images of each vehicle make and model, to the extent images were available. To assist in obtaining such images, CarMax entered into a license agreement with Transtock.

12. CarMax's research pages contain information on vehicle makes and models made between 1999 and 2011. Since CarMax's research pages have been established, they have been

4

used far less than the remainder of CarMax's website. For example, for calendar year 2012, only approximately 0.5% of visitors to the CarMax website viewed the research pages containing the Images at issue. The research pages do not display cars CarMax has for sale; rather, they provide a place for purchasers to learn about various types of vehicles generally.

### Transtock/CarMax License

13. On or around February 20, 2007, Transtock and CarMax entered into a license agreement (together with all subsequent renewals, the "Transtock/CarMax License") through which Transtock granted to CarMax a license that included Transtock's "Studio Collection," consisting of car images with standard front, ¾, profile and interior shots against a white background for usage on CarMax's website and all print media. The license extended through the end of CarMax's fiscal year, February 28, 2008. CarMax planned to, and did, use these images primarily in its research galleries. It has also, at times, used a select number of the Images for marketing collateral, including store displays.

14. The Transtock/CarMax License did not mention eVox, and did not specify from where Transtock received or collected the images comprising its Studio Collection or Scenic Collection, or whether Transtock created its own images for these collections.

15. Under the Transtock/CarMax License, Transtock would periodically send CarMax a hard drive with new images of recent vehicles. CarMax last received a hard drive from Transtock in or around June, 2012, which included vehicle makes and models through 2011.

16. For six years, CarMax and Transtock continued to renew the Transtock/CarMax License every fiscal year, with Transtock sending CarMax an invoice around the expiration date, and CarMax sending payment. Despite attempts from other licensors (including eVox) to obtain

CarMax's business over the six years, CarMax continued its license with Transtock, as the business relationship was working well.

17.     The most recent renewal of the Transtock/CarMax License extended into 2013.

### The Controversy Between the Parties

18.     Over the last several years, eVox periodically called CarMax seeking a license arrangement. As CarMax was satisfied with its relationship with Transtock, CarMax did not seriously pursue a relationship with eVox.

19.     On or around December 11, 2012, eVox contacted CarMax to discuss a potential license. Unaware of the relationship between eVox and Transtock, CarMax believed eVox was still simply another potential vendor of images, competing with Transtock. The Transtock/CarMax License had not yet expired, and CarMax expected to continue its license with Transtock, as had been its practice since 2007. But, CarMax agreed to speak with eVox after the holidays, in timing that was agreeable to eVox as well.

20.     Unbeknownst to CarMax at the time, on information and belief the eVox Reseller Agreement with Transtock had been terminated by eVox effective September, 2012 and was not being renewed. eVox, however, knew that its contract with Transtock had expired and knew since 2007, when CarMax's name appeared in the eVox Reseller Agreement with Transtock, that CarMax was using eVox images. On information and belief, eVox had also been receiving reports from Transtock that CarMax was paying for a license, as well as a share of the revenue from CarMax's license payments to Transtock over the past six years of the CarMax/Transtock License. eVox made no mention of constraints on CarMax's use of eVox images when it contacted CarMax. It did not advise that Transtock's license had expired, or that it viewed CarMax's license as in question.

6

21. On or around February 5, 2013, CarMax realized it had not seen the most recent invoice from Transtock and contacted Transtock to remind it to send the invoice for the Transtock/CarMax License for the upcoming year. Transtock for the first time informed CarMax that its agreement with eVox ended in September 2012 and was not being renewed. Transtock further informed CarMax that under the eVox Reseller Agreement, Transtock could extend the license of images CarMax was currently using, but it could not license new images of new model vehicles. CarMax reasonably believed that a new license agreement would be signed imminently that would provide continuous licensing coverage for the images presently in use.

22. However, unable to license new vehicle images from Transtock, CarMax decided to also pursue its options of licensing images directly from eVox. On February 5, 2013, CarMax contacted eVox to request a call regarding a potential license and to get details on eVox's rates and offers.

23. On February 11, 2013, Transtock again confirmed to CarMax that Transtock was allowed to renew image licenses with eVox images for up to one year after Transtock's agreement with eVox expired and stated that Transtock would be happy to renew the original Transtock/CarMax License.

24. Only later, however, did Transtock advise CarMax that it was wrong about its ability to renew the license, and that, contrary to what Transtock had previously told CarMax, CarMax could not get a license from Transtock covering the existing images.

25. Meanwhile, CarMax continued to try to reach eVox regarding a potential license. Between February 11 and 14, CarMax called eVox several times with no reply. On February 18, 2013, CarMax told eVox that CarMax was prepared to skip the typical pre-license review of

images and get a license agreement in place. eVox continued to push off conversations about a license agreement.

26. On information and belief, eVox was, during this period, contemplating asserting claims for copyright infringement against CarMax for use of images during any gap that might exist prior to issuance of the license being contemplated. But eVox did not disclose this intention to CarMax, instead leading CarMax to believe that its use of Images pending conclusion of a new license was permitted. CarMax's reliance on eVox's conduct in this regard was also reasonable in the business context, in that if CarMax were required to remove all of the existing eVox Images from its website, this would disadvantage eVox in its efforts to obtain CarMax's future licensing business and would cause CarMax to be more inclined to consider a different image vendor. On information and belief, by not advising CarMax that it desired removal of images from CarMax's website during the period of license negotiations, eVox intended to enhance its claims for copyright infringement and its leverage in negotiations.

27. On March 1, 2013, eVox requested a phone call and, for the first time, asserted that CarMax was using eVox Images without a valid license, and that such uses would need to be part of any ongoing discussions between CarMax and eVox. eVox still did not request that CarMax take down eVox images, nor had eVox ever mentioned prior to this time the expiration of its agreement with Transtock over five months prior to this date.

28. Prior to this date, CarMax reasonably believed, based on eVox's conduct, that eVox was allowing the use of the Images through the term of the Transtock/CarMax License and thereafter until a license with eVox could be finalized.

29. In light of eVox's position, CarMax began the process of removing and/or disabling links to all eVox Images, so that they no longer appeared on or were accessible through

CarMax's website. CarMax effectuated such removal prior to securing a new licensor or finding replacements for such images, leaving bare spaces and error messages on its website where eVox Images once appeared. CarMax also removed the few printed Images displayed in its stores, choosing to leave bare walls rather than display Images that eVox now contended were unlicensed.

30. On March 27, 2013, after several requests from CarMax, eVox finally sent CarMax a draft license agreement, but with language covering use of images only on a going-forward basis. On April 4, 2013, CarMax's sent a redlined version of the draft license agreement back to eVox, proposing that the license would apply retroactively to cover prior uses of images and including language whereby eVox would release prior claims.

31. On April 22, 2013, eVox and CarMax had a call, purportedly to discuss the license agreement. During that call, eVox's attorney said that before discussing a license, he needed to discuss other issues including (1) that based on CarMax's continued use of images after eVox's termination of the Transtock relationship, the scale of the copyright infringement was significant, and eVox needed to protect its rights; (2) that eVox had no need to prove actual damages because statutory damages were available; (3) that CarMax needed to bring its litigation counsel into the discussion; and (4) that he wanted to meet in person to discuss these issues further, proposing that he and an eVox representative come to Richmond, Virginia for the discussion.

32. On May 29, 2013, CarMax met with eVox at the offices of CarMax in Richmond, Virginia as eVox had requested. No resolution of the dispute was reached during this meeting. Negotiations ended when CarMax insisted on entitlement to statutory damages of hundreds of times the annual license fee for the brief period of allegedly unlicensed use.

33. eVox has refused to offer CarMax a license covering past use without payment of damages for what eVox alleges to be past infringement.

### eVox's Copyright Registrations

34. On information and belief, eVox has registered over 5000 copyright registrations with the United States Copyright Office.

35. At least some of eVox's copyright registrations cover multiple images. Some registrations appear to cover multiple images of the same vehicle. Others appear to cover multiple images of multiple vehicles.

36. The images purportedly covered by eVox's registrations are in some cases not clear from the copyright registrations.

37. Many of eVox's registrations, on their face, were not registered within 90 days of the date of first publication of the images claimed by eVox, as required by 17 U.S.C. Section 412 to pursue statutory damages. On information and belief, of the thousands of registrations eVox possesses, many covering multiple images, the dates described for initial publication are not always accurate and may not have actually occurred within 90 days of registration.

### CarMax's Use of eVox's Images

38. CarMax used fewer than 20 of eVox's Images in CarMax's store displays, with the same less than 20 Images appearing in each store. Although CarMax also used a small portion of the Images in various pages of its website, the primary use of eVox Images was in the research portion of CarMax's website. That portion is rarely viewed by visitors; approximately 0.5% of visitors to CarMax's website visit the research pages of the website where Images appear.

39. The research portion of the website does not consequentially drive sales. Since CarMax removed the Images from its website, there has been no meaningful impact on sales.

40. "Searches" conducted on CarMax's website generally do not link to the research galleries. Instead, use of the CarMax search tool links to the inventory of cars available for purchase, where the images appearing of actual cars for sale are not eVox Images.

41. Among the Images for which eVox claims copyright registration that were delivered to CarMax by Transtock, a substantial portion were not actually displayed to website visitors during the period between the expiration of CarMax's last Transtock license and the time that those images were disconnected from the website. The Images on CarMax's research pages were displayed to visitors only when a particular make, model, and year were entered by the visitor. Where no individual user conducted a search for a particular vehicle, the Images for that vehicle were not displayed to the public, distributed, or reproduced during that period.

42. eVox knew that CarMax was a licensee of its Images from 2007 forward, and, on information and belief, eVox received and accepted payment and reports from Transtock covering that period of time, including the time between termination of the eVox Reseller Agreement in September 2012 and expiration of the Transtock/CarMax License in 2013. At no time prior to February 2013 did eVox advise CarMax that it believed that CarMax did not have a valid license. Nonetheless, on information and belief, eVox now asserts that, due to its termination of Transtock's reseller relationship, the Transtock/CarMax License entered during Transtock's reseller relationship and extending into 2013 did not extend to the duration of its term.

## CLAIM FOR RELIEF
### (Declaratory Judgment)

43. CarMax incorporates by reference Paragraphs 1 through 42 as though fully set forth herein.

44. Because of eVox's actions, communications, and threats described herein, CarMax has a real and reasonable apprehension of copyright infringement litigation by eVox. Accordingly, an actual controversy has arisen and now exists between CarMax and eVox within the meaning of 28 U.S.C. § 2201.

45. eVox contends that CarMax owes eVox statutory damages for infringement during the time between the expiration of the Transtock/CarMax License and CarMax's removal of eVox Images from its website. On information and belief, eVox contends that CarMax did not have a license after eVox terminated Transtock's reseller relationship. On information and belief, eVox further contends that it is entitled to an award of statutory damages for each image copied, regardless of whether several images were registered under one copyright registration. On information and belief, eVox further contends that it is entitled to statutory damages for all Images that were potentially visible to the public by users of the CarMax website, even if Images were not actually displayed to users of the website on any occasion during the period between expiration of the Transtock/CarMax License and CarMax's disconnection of eVox Images from accessibility through its website.

46. eVox's claims are incorrect and without justification. CarMax contends that (i) the Transtock/CarMax License was valid and in effect through its term, regardless of eVox's termination of Transtock's agency after that license was entered, and that, further, eVox is estopped to assert otherwise; (ii) CarMax did not infringe any of eVox's alleged copyrights in the Images, based on eVox's acquiescence and estoppel; (iii) certain registrations submitted by eVox to the United States Copyright Office were not registered within ninety (90) days of the date of first publication as necessary to permit any award of statutory damages; (iv) only at most one statutory damages award is available to eVox per copyright registration, regardless of

12

whether the registration covers multiple images; (v) merely maintaining many of the Images on a CarMax server, without actual distribution, display, making derivative works, or reproduction during any purportedly unlicensed period did not infringe; and (vi) any infringement that could be found against CarMax was innocent, as CarMax lacked intent to infringe and had a demonstrated history of licensing the Images.

47. On information and belief, CarMax and eVox dispute:

   a. Whether CarMax has infringed any copyrights, or whether its conduct is nonactionable due to eVox's acquiescence or estoppel based on its conduct, communications and acts;

   b. Which of eVox's copyright registrations were registered within 90 days of the date of first publication, so as to potentially be eligible for a statutory damages award;

   c. The total number of statutory damages awards, if any, that may be available based on alleged copying of multiple images from one copyright registration;

   d. Whether any infringement may be asserted for images not actually displayed to CarMax users;

   e. Whether CarMax's license from Transtock extended through the duration of its term, and whether eVox is estopped to assert otherwise; and

   f. Whether, if CarMax infringed, it was an innocent infringer, where eVox knew of CarMax's use of the Images while eVox and CarMax were negotiating a license, eVox failed to inform CarMax of its use of the Images and CarMax removed the Images upon learning of eVox's

13

objection.

48. CarMax seeks, and is entitled to, a judicial determination and declaration from this Court under the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201 regarding the foregoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For a declaration that CarMax's license received from Transtock during Transtock's representation of eVox was valid and enforceable throughout its term, and that eVox is estopped to dispute that license;

2. For a declaration that CarMax has not infringed due to eVox's acquiescence or estoppel during any period of unlicensed use; in the alternative,

3. For a declaration specifying the copyright registrations submitted by eVox to the United States Copyright Office that were not registered within ninety (90) days of the date of first publication, so as to justify an award of statutory damages;

4. For a declaration that, in this case, only at most one statutory damages award is available per copyright registration, regardless of the number of images in each registration;

5. For a declaration that no infringement has occurred for any Image not displayed to CarMax users during any unlicensed period;

6. For a declaration that any alleged infringement by CarMax was innocent;

7. For an award of the costs, expenses, and attorneys' fees incurred by CarMax pursuant to 17 U.S.C. § 505; and

8. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: May 29, 2013

CARMAX AUTO SUPERSTORES, INC.
CARMAX BUSINESS SERVICES, LLC

By: /s/ J. Matthew Haynes, Jr.

J. Matthew Haynes, Jr., Esquire (VSB#51007)
MCCANDLISH HOLTON, PC
1111 East Main Street, Suite 1500
P.O. Box 796
Richmond, VA 23218
(804) 775–3809 Telephone
(804) 775–3800 Facsimile
mhaynes@lawmh.com

*Of Counsel:*

FENWICK & WEST LLP
Laurence F. Pulgram (*Pro Hac Vice to be Requested*)
Ilana Rubel (*Pro Hac Vice to be Requested*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350
lpulgram@fenwick.com

Attorneys for Plaintiffs
CarMax Auto Superstores, Inc. and CarMax Business Services LLC

15