**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CARMAX AUTO SUPERSTORES, INC., a                )
Virginia corporation, and CARMAX BUSINESS        )
SERVICES, LLC, a Delaware limited liability      )     Civil Action No. 3:13-cv-345-HEH
company,                                         )
                                                 )
                        Plaintiffs,              )
                                                 )
        v.                                       )
                                                 )
EVOX PRODUCTIONS, LLC, a Delaware limited        )
liability company,                               )
                                                 )
                        Defendant.               )
                                                 )

**PLAINTIFFS' REDACTED OPPOSITION TO DEFENDANT EVOX PRODUCTIONS,**
**LLC'S MOTION FOR ENTRY OF AN ORDER (A) DISMISSING THIS ACTION, OR,**
**(B) IN THE ALTERNATIVE, TRANSFERRING VENUE TO THE CENTRAL**
**DISTRICT OF CALIFORNIA, OR, (C) IN THE ALTERNATIVE, STAYING THIS**
**ACTION PENDING RESOLUTION OF THE CENTRAL DISTRICT OF CALIFORNIA**
**ACTION**

## Table of Contents

Page

INTRODUCTION AND SUMMARY.................................................................................1

STATEMENT OF FACTS..............................................................................................4

    A.    Plaintiff CarMax and the Witnesses to this Action are in Virginia. ........................4

    B.    The eVox-Transtock Reseller Agreement .................................................4

    C.    The CarMax/Transtock License...............................................................5

    D.    CarMax's Efforts to Renew Its License at Expiration in 2013............................7

    E.    Efforts at Settlement .............................................................................9

    F.    Procedural History .............................................................................10

ARGUMENT .........................................................................................................10

I.    THIS COURT, AS THE FIRST FILED FORUM, PROPERLY DETERMINES
WHICH FORUM SHOULD DECIDE THE TWO ACTIONS. .....................................10

II.    THIS ACTION FOR DECLARATORY RELIEF IS PROPERLY BROUGHT..............10

    A.    The First-to-File Rule Dictates That This Action Should be Heard Here and Not
Dismissed, Transferred or Stayed. ........................................................11

    B.    CarMax Did No Forum Shopping, and the Suit Was Not Filed in Bad Faith. .......13

    C.    CarMax's Action Was Ripe, Not Anticipatory, and Not Improperly Timed. .......15

    D.    eVox Has Not Presented the Requisite "Good Reason" for the Court to Decline
to Exercise its Declaratory Judgment Jurisdiction.......................................17

        1.    The California Action Was Not Pending When This Case Was Filed....177

        2.    *Gabriels*, A Different Case Involving Different Parties, Does Not
Present the Requisite "Good Reason." ..................................18

III.    THE INTEREST OF JUSTICE AND CONVENIENCE OF THE PARTIES
OVERWHELMINGLY WEIGH AGAINST TRANSFER UNDER SECTION 1404.....20

    A.    CarMax's Choice of Forum is Entitled to Substantial Weight ...........................21

    B.    Witness Convenience, Compulsory Process and Access to Sources of Proof
Weigh Against Transfer........................................................................22

C.      Convenience to the Parties Does Not Favor Transfer ............................................24

D.      Interest of Justice Weighs Against Transfer ........................................................26

CONCLUSION .........................................................................................................................28

## Table of Authorities

CASES                                                                                      PAGE

*Acterna v. Adtech, Inc.,*
   129 F.Supp.2d 936 (E.D. Va. 2001) ................................................................. 14, 22

*Aetna Cas. & Sur. Co. v. Quarles,*
   92 F.2d 321 (4th Cir. 1937) ......................................................................... 18, 20

*Affinity Memory & Micro, Inc. v. K&Q Enterprises, Inc.,*
   20 F.Supp.2d (E.D. Va. 1998) ........................................................................ 10

*AGCS Marine Ins. Co. v. Krieger Am. Transp. Co.,*
   No. 2:12-cv-04608-ODW(FMOx), 2012 WL 3238278 (C.D. Cal. Aug. 6, 2012) ................ 10

*Byerson v. Equifax Info. Services, LLC,*
   467 F.Supp.2d 627 (E.D. Va. 2006) ........................................................... *passim*

*Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals, Inc.,*
   140 F.2d 47 (4th Cir. 1944) ........................................................................... 11

*Chang v. Maxwell,*
   19 F. App'x 148 (4th Cir. 2001) ..................................................................... 18, 20

*Doe 1 v. AOL LLC,*
   552 F.3d 1077 (9th Cir. 2009) ........................................................................ 27

*Fastmetrix, Inc. v. ITT Corp.,*
   Civ. No. 1:12cv1291, 2013 WL 428537 (E.D. Va. Jan. 31, 2013) ............................. 27

*FindWhere Holdings, Inc. v. Sys. Environment Optimization, LLC,*
   626 F.3d 752 (4th Cir. 2010) ......................................................................... 27

*Fun-Damental Too v. Universal Music Group,*
   No. 97-1595, 1997 U.S. Dist. LEXIS 4784 (E.D. Pa. Apr. 10, 1997) .......................... 17

*Genentech, Inc. v. Eli Lilly and Co.,*
   998 F.2d 931 (Fed.Cir.1993) ..................................................................... 11, 12

*GTE Wireless, Inc. v. Qualcomm, Inc.,*
   71 F.Supp.2d 517 (E.D. Va. 1999) ............................................................... 14, 22

*Heinz Kettler GMBH & Co. v. Razor USA, LLC,*
   750 F.Supp.2d 660 (E.D. Va. 2010) ........................................................... *passim*

*Hop-In Food Stores, Inc. v. S&D Coffee, Inc.,*
   642 F.Supp. 1106 (W.D. Va. 1986) ................................................................. 14

*Koh v. Microtek Int'l Inc.*,
    250 F.Supp.2d 627 (E.D. Va.2003) .............................................................................*passim*

*Lugus IP LLC v. Volvo Car Corp.*,
    No. 3:11CV811-HEH, 2012 WL 1715983 (E.D. Va. May 15, 2012)
    (Hudson, J.) ....................................................................................................21, 22, 24, 25

*Mercexchange, LLC v. eBay, Inc.*,
    467 F.Supp.2d 608 (E.D. Va. 2006) .................................................................................22

*Mission Ins. Co. v. Purtian Fashions Corp.*,
    706 F.2d 599 (5th Cir. 1983) ...........................................................................................14

*NCR Corp. v. First Fin. Computer Servs.*,
    492 F.Supp.2d 864 (S.D. Ohio 2004) ...............................................................................13

*Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*,
    751 F.2d 801 (5th Cir. 1985) ...........................................................................................14

*Pinpoint IT Serv., LLC v. Atlas IT Export Corp.*,
    812 F.Supp.2d 710 (E.D. Va. 2011) .................................................................................22

*PRECI-Dip, sA v. Tri-Star Elect. Int'l, Inc.*,
    Civ. No. 08 C 4192, 2008 WL 5142401 (N.D. Ill. Dec. 4, 2008) .........................................14

*Prod. Group, Int'l, Inc. v. Goldman*,
    337 F.Supp.2d 788 (E.D. Va. 2004) .................................................................................25

*Rei-Jeu Chang v. Maxwell*,
    102 F.Supp.2d 316, 318-19 (D. Md. 2000) .......................................................................20

*Samsung Elec. Co. Ltd. v. Rambus, Inc.*,
    386 F.Supp.2d 708 (E.D. Va. 2005) .......................................................................16, 20, 21

*Seattle Pac. Indus. Inc. v. Levi Strauss & Co.*,
    No. C97-1282D, 1997 U.S. Dist. LEXIS 22579 (W.D. Wash. Dec. 12, 1997) .....................11

*Serco Serv. Co. LP v. Kelley Co., Inc.*,
    51 F.3d 1037 (Fed. Cir. 1995) .........................................................................................14

*Standard Fire Ins. Co. v. Armstrong*,
    Civ. No. 3:12CV181, 2012 WL 3730644 (E.D. Va. Aug. 28, 2012) ..............................15, 17

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) .........................................................................................................28

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) .........................................................................................27

*The Fox Group, Inc. v. Cree, Inc.,*
  749 F.Supp.2d 410 (E.D. Va. 2010) ............................................................*passim*

*Touchstone Research Lab., Ltd. v. Anchor Equip. Sales Inc,*
  294 F.Supp.2d 823 (N.D. W.Va. 2003)........................................................22

*United States ex rel. B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co.,*
  70 F.3d 1115 (10th Cir. 1995) .....................................................................27

*United States v. Douglas,*
  626 F.Supp. 621 (E.D. Va. 1985) ................................................................21

*Ven –Fuel, Inc. v. Dept. of the Treasury,*
  673 F.2d 1194 (11th Cir. 1982) ...................................................................16

*Volvo Const. Equip. N. Am. v. CLM Equip. Co.,*
  386 F.3d 581 (4th Cir. 2004) ....................................................12, 15, 16, 26

*Wilton v. Seven Falls Co.,*
  515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) .............................12

*Yoder v. Heinhold Commodities Inc.,*
  630 F.Supp. 756 (E.D. Va. 1986) ...........................................................16, 21

**STATUTES**

18 U.S.C. § 504 ...............................................................................................10

28 U.S.C. § 1338(a).........................................................................................27

Plaintiffs CarMax Auto Superstores, Inc. and CarMax Business Services, LLC (collectively "CarMax") hereby oppose and respectfully request that the Court deny Defendant eVox Productions, LLC's ("Defendant" or "eVox") Motion for entry of an order to dismiss, transfer, or stay this action (Dkt. 12 ("Motion" or "Mot.")).

## INTRODUCTION AND SUMMARY

This action is properly brought and should be decided in the Eastern District of Virginia. This District is where CarMax is located; where its allegedly infringing conduct occurred; where the relevant CarMax employee witnesses are located; and where numerous important non-party witnesses—including CarMax vendors, contractors, and former employees—can be found and procured for appearance at trial. This District presents both the most convenient and just forum, as well as the location where the first filed action between the parties was properly initiated.

CarMax sued and served eVox on May 29, 2013. The Complaint seeks judicial declaration as to the validity of eVox's threats of copyright infringement, as well as its claims to exorbitant statutory damages disproportionate to any conceivable injury. For six years, eVox's reseller and agent, Transtock, Inc. ("Transtock"), had licensed a portfolio of stock images of vehicles to CarMax for use in marketing. CarMax renewed the license each time it expired, for a fee totaling less than $100,000 for each CarMax fiscal year. Transtock in turn, passed ▮▮▮▮ ▮▮▮▮ back to eVox, as owner of the images.

When the license came up for renewal in February 2013, CarMax learned that eVox had terminated Transtock's agency as of September 2012. CarMax promptly opened negotiations with eVox, which had long sought to displace Transtock and sell to CarMax directly. eVox knew full well that CarMax was using its images, which were openly visible on CarMax's website, but said nothing to suggest that use during the license negotiation was unauthorized or infringing. When, in March 2013, eVox sprung the news that it was demanding payment for past

"unlicensed use" in addition to a forward license, CarMax set about removing the images.

eVox, however, persisted in threatening claims for unlicensed use. eVox proposed to meet in Richmond to explain its position to CarMax's litigators, and CarMax agreed to a May 29 date. But when eVox refused CarMax's requests to provide any demand prior to that meeting, CarMax began to fear that no reasonable approach would be proposed. While hoping for the best at the May 29 meeting, CarMax also prepared for the worst: it drafted a declaratory relief complaint. The worst happened. At the meeting, eVox still made no resolution proposal, instead simply threatening statutory damages that were thousands of times the license fee to cover a few weeks of use after the expiration of CarMax's license through Transtock. (eVox's California complaint (the "California Action") asks for statutory damages "in no event . . . less than $18 million," compared to a license fee of less than $8,000 per month. Horstman Decl. Exh. 3 ¶ 15.) In addition, the May 29 meeting was the first time CarMax learned the radical nature of eVox's claim. eVox asserted (as alleged in its California Action (*id.* Exh. 3 ¶ 41)) not only that CarMax's use was unauthorized during the license negotiations post-expiration of CarMax's license with Transtock, but also that CarMax's license had been silently and retroactively invalidated back to September 2012, when eVox (unbeknownst to CarMax) terminated Transtock's agency. Thus, eVox has now asserted in California that CarMax was infringing and owes massive statutory damages from September 2012 on (*id.*), despite eVox's knowledge of, profit from, and non-objection to CarMax's use of the images during this period. Especially after learning of this extreme position, and receiving only threats with no proposal for resolution, CarMax knew no resolution was possible, and so filed this action. Rather than counterclaiming in this Court, eVox filed a second action a week later in the Central District of California, and then moved to transfer or dismiss this one.

2

eVox's Motion fails on both of the bases it asserts.  First, eVox claims that the Court should exercise discretion to deny a forum to a first filed action that is "anticipatory," based on "misleading" conduct or "forum shopping."  But this action is none of those.  eVox does not dispute that a ripe controversy exists.  This Court therefore requires at least good reasons not to exercise jurisdiction.  None exist here.  This is not a case in which a party with no relationship to the forum seeks to litigate in an arbitrary forum of its choosing.  Rather, CarMax rightfully seeks to litigate in its home jurisdiction, where the acts occurred and its witnesses can be procured. eVox cites no case in which jurisdiction has been held improper under these circumstances.  And although eVox insinuates there was something misleading about the Virginia meeting *that it proposed,* eVox points to nothing deceptive in CarMax's conduct.  By eVox's rationale, the mere prospect that a party may be sued would preclude it from ever filing a declaratory relief action. But that rationale inverts the rule that reasonable anticipation of litigation *permits* a declaratory judgment action.

eVox also errs in its alternative argument that California is a more convenient forum. The principal issue here will be how, when and why CarMax used the images, the evidence of which will be provided by numerous CarMax current and former employees, vendors and contractors – all located in Virginia, and some not procurable for trial in California.  eVox, on the other hand, fails to identify witnesses in California with testimony to give about matters actually in dispute, and the only witnesses it does mention are its own employees, whom it could bring to Virginia.  eVox points to Transtock's involvement in the licensing of the images as a reason to transfer to California, but both Transtock and its Texas-resident principal have agreed to appear and litigate this case in Virginia.  eVox admits that the forum selection clause between eVox and Transtock does not govern the copyright and trademark claims eVox has asserted.

Mot. at 18 & n.4.  Finally, eVox resorts to makeweight in arguing that its dispute with CarMax needs to be adjudicated in the same location as a prior action, *EVOX Productions, LLC v. Gabriels Technology Solutions, Inc., et al.,* CV13-846 CJC (RZx) ("*Gabriels*").  The two cases may happen to involve some of the same copyrights, but otherwise involve completely separate resellers and licensees, courses of action by the alleged infringer, and factual assessments.

There is one area in which eVox and CarMax apparently agree:  that, as the location of the first filed action, it is this Court's role to determine whether these two disputes will proceed in Virginia or California.  Indeed, as described in Part I, *infra*, this District and the Central District of California agree that the first filed forum receives deference from the later forum in determining which action will proceed.  Accordingly, CarMax respectfully requests that the Court deny eVox's Motion and rule that this action shall proceed in this forum, along with any compulsory counterclaims that eVox chooses to bring.

## STATEMENT OF FACTS

### A.     Plaintiff CarMax and the Witnesses to this Action are in Virginia.

Defendant CarMax Auto Superstores, Inc. is a Virginia corporation that operates CarMax stores where used vehicles are sold.  Defendant CarMax Business Services, LLC is responsible for the operation of CarMax's website, www.carmax.com, through which prospective buyers can search for used cars.  Both CarMax entities have their principal place of business in Richmond.  Here, with their parent company, CarMax, Inc., they employ over 1,000 people, including those responsible for CarMax's use of the eVox images at issue, the implementation of CarMax's website, and its in-store displays.  Declaration of Robert Sorensen ("Sorensen Decl.") ¶3. 6-11.

### B.     The eVox-Transtock Reseller Agreement

On September 25, 2007, eVox and Transtock entered into an eVox Reseller Agreement (the "Reseller Agreement;" attached as Exhibit A to the Declaration of Dean Siracusa ("Siracusa

Decl.")).  The Reseller Agreement appointed Transtock as "eVox non-exclusive agent with respect to licensing [eVox's] images to end user customers." *See* Reseller Agreement preamble and § 1(a)-(b) (further stating Transtock is eVox's "reseller agent" and "will hold the Images as eVox's Agent").  Transtock was obligated to remit ███████████████████ to eVox.  *Id.* § 6(a).  The Reseller Agreement specifically called out CarMax as an existing and permitted client of Transtock.  *Id.* § 3(b).  It provided that, after an initial three year term, Transtock's agency relationship automatically renewed annually absent notice of termination.  *Id*. § 2(a).  The Reseller Agreement remained in force through September, 2012, when it ended by virtue of eVox's termination notice to Transtock.  Siracusa Decl. ¶ 11.

Nothing in the Reseller Agreement or the parties' course of conduct suggests any limitation on the duration of the licenses that Transtock was empowered to grant while acting as agent.  Contrary to eVox's description of Transtock as its "sublicensor" with "limited rights to sublicense" (*e.g.*, Mot. at 4, citing to redacted exhibit), the Reseller Agreement contains no such terms.  On multiple occasions, Transtock granted licenses to CarMax extending beyond the duration of Transtock's agency, for which eVox kept the money without objection.  Siracusa Decl. ¶¶ 7-9.  When, in July 2012, eVox notified Transtock that it would not renew the Reseller Agreement, eVox did not advise CarMax.  Without citing any provision in the Reseller Agreement, eVox now asserts that its termination of its agent had the effect of voiding CarMax's paid-for license through that agent, and that CarMax's post-September 2012 use of the images therefore gives rise to vast statutory damages.

### C.     The CarMax/Transtock License

On February 20, 2007, CarMax entered into a license agreement with Transtock (together with subsequent renewals, the "Transtock/CarMax License") pursuant to which CarMax received, at its Richmond, Virginia facilities, the images at issue.  The Transtock/CarMax

License was negotiated and executed by CarMax in Richmond by current and former CarMax employees that reside in Richmond.  Sorensen Decl. ¶ 7; Declaration of Don McCants ("McCants Decl.") ¶ 3.  Transtock licensed to CarMax a "Studio Collection" of thousands of stock automobile images for use on CarMax's website and in print media for under $100,000 a year.  *See* McCants Decl. ¶ 4.  Transtock did not at that time mention eVox or the Reseller Agreement, and did not specify the source of the images comprising its Studio Collection.  *See id*. ¶ 5.

The original license extended through the end of CarMax's fiscal year, February 28, 2008.  *Id.* ¶ 4.  For five years thereafter, CarMax and Transtock continued to renew the Transtock/CarMax License, with Transtock sending an invoice to CarMax in Richmond, Virginia around the expiration date, and CarMax sending payment from Richmond, Virginia.  *Id.* ¶ 8.  The most recent renewal of the License extended from 2011 into 2013.  *Id.* ¶ 9.

Pursuant to the terms of the Transtock/CarMax License, Transtock periodically sent to CarMax in Virginia hard drives containing new images of recent vehicles.  *Id.* ¶ 7.  CarMax employees or contractors performed the work to copy, modify, and otherwise enable the use of those images on the carmax.com website and promotional materials.  Sorensen Decl. ¶ 8.  All CarMax employees and third parties responsible for those steps, as well as for the use of the eVox images at issue in this lawsuit, the placement of those images on CarMax's website, display of images in CarMax stores, and discussions with Transtock or eVox are located in Richmond, Virginia.  *Id.* ¶¶ 7-19.

For the six years between 2007 and 2013, CarMax paid Transtock a total of $539,654.50 pursuant to the Transtock/CarMax License, all issued from CarMax's Richmond, Virginia offices.  *See* McCants Decl. ¶ 28.  By the terms of the Reseller Agreement, eVox would have

6

received ███████ of those payments.  Siracusa Decl. ¶ 6 Ex. A.  eVox kept all such

payments, covering periods into 2013, without objection.  Siracusa Decl. ¶¶ 7-9.

### D.      CarMax's Efforts to Renew Its License at Expiration in 2013

Both before and after September 2012, eVox made numerous attempts to secure

CarMax's business via calls and emails directed to CarMax personnel in Richmond.  McCants

Decl. ¶¶ 11-16.  In those communications, eVox stated that it was aware CarMax was using

eVox images on its website, and encouraged CarMax to consider a direct license with eVox.  *Id.*

¶¶ 12, 15.  Don McCants, a CarMax employee in Richmond responded to eVox on September

24, 2012, that CarMax was licensed through Transtock to use any eVox images on CarMax's

website through the end of 2012.  *Id.* ¶ 14, Exh. B.  eVox remained silent then as to any

contention that such license was in fact void.  *Id.* ¶ 13, 15.  These critical communications,

going to questions of notice, innocence, acquiescence and estoppel in this action, were directed

to or made by CarMax personnel in Richmond, Virginia.

Unaware until mid-February 2013 of eVox's termination of the Reseller Agreement

(much less eVox's current claim that CarMax's use after that termination constituted

infringement), CarMax believed it had an ongoing, renewable license with Transtock.  *Id.* ¶¶ 15,

18, 23.  On or around February 5, 2013, CarMax realized it had not received a renewal invoice

for the upcoming year and contacted Transtock to request it, whereupon Transtock advised that

its agreement with eVox had ended.  *Id.* ¶ 17.  Transtock assured CarMax that it could still

extend the license of images CarMax was *currently* using; it just could not license new images of

new model vehicles.  *Id.* ¶¶ 17-18.  CarMax thus believed that a license renewal would be signed

imminently to provide continuous licensing coverage for the images presently in use.  *Id.* ¶ 18.

Again, these pivotal communications, bearing on CarMax's defenses to eVox's infringement

claims, were directed to or made by CarMax's representative located in Richmond Virginia.

7

Given Transtock's inability to offer new images for future model years, CarMax decided to pursue a direct license with eVox, which could offer such images.  *Id.* ¶ 19.  In early February, CarMax called eVox multiple times, with no reply.  *Id.* ¶ 22.  Then, on February 14, 2013, Transtock notified CarMax that it had been mistaken and did *not*, in fact, have renewal authority, causing CarMax to press eVox to expedite the license.  *Id.* ¶ 21.  Meanwhile, eVox pushed off conversations about a license agreement, still expressing no objection to CarMax's known and obvious use of the images while negotiations were pending.  *Id.* ¶ 22.  These communications were all with CarMax's representative in Richmond Virginia.  *Id.* ¶¶ 19-22.

On March 1, 2013, eVox for the first time asserted that CarMax's past image use was unlicensed, and that such use would need to be part of any ongoing discussions between CarMax and eVox.  *Id.* ¶ 23.  eVox still did not request the images' removal.  *Id.* ¶¶ 23-24.   In light of eVox's newly stated position, CarMax personnel in Richmond began the process of disabling links to all eVox images on CarMax's website.  *Id.* ¶ 25; Sorensen Decl. ¶¶ 8, 21.  CarMax did so prior to finding replacements, leaving bare spaces and error messages where eVox images once appeared.  Sorensen Decl. ¶ 22.  CarMax also directed removal of the printed images displayed in stores, choosing to leave bare walls rather than display images that eVox now contended were unlicensed.  *Id.*  All CarMax personnel interacting with eVox or directing and executing the removal of images were in Richmond.  McCants Decl. ¶ 25, Sorensen Decl. ¶¶ 20-21.

After several requests, eVox finally sent a draft license on March 27, 2013, received by CarMax personnel in Richmond, covering forward use only.  McCants Decl. ¶ 26.  CarMax returned a redlined version proposing that the license apply retroactively to cover any gap resulting from the termination of Transtock's license.  *Id.*  eVox, however, did not respond with further drafts, instead attempting to stake out a claim for statutory damages. *Id.* ¶ 27.

8

### E.   Efforts at Settlement

On April 22, 2013, eVox proposed an in-person meeting between CarMax and eVox in Richmond to discuss issues relating to a license and to eVox's potential copyright claims for statutory damages.  Sorensen Decl. ¶ 24.  eVox requested that someone from CarMax's litigation side be available for the meeting.  *Id*.  The meeting was scheduled for May 29, 2013.  *Id.*

For more than a week leading up to the May 29 meeting, CarMax contacted eVox repeatedly, by phone and in writing, requesting a proposal for.  *Id.* ¶ 26.  CarMax sought to determine whether eVox's demand was in a reasonable range, such that resolution through negotiation might be possible, and to make decisions as to whether CarMax should move forward with alternative providers of stock images to fill its blank spaces.  *Id.*  But eVox refused to provide any proposed terms of resolution.  *Id.* ¶ 27.  CarMax therefore grew concerned that eVox was not serious about discussing settlement on reasonable terms, and CarMax began to prepare Plan B: a possible declaratory judgment complaint if negotiations failed.  *Id.* CarMax remained hopeful that the meeting would proceed towards resolution.  But eVox's threats, followed by its silence as to potential resolution terms, caused CarMax concern that this dispute could continue to hang over CarMax's business well after the May 29 meeting.  *Id.*

At the May 29 meeting in Richmond, eVox still did not provide proposed terms of resolution.  *Id.* ¶ 28.  It simply threatened CarMax with the prospect of astronomical statutory damages—thousands of times the monthly license fee for the brief period of allegedly unlicensed use.  *Id.*  Further, at this meeting, CarMax for the first time learned of eVox's theory (espoused in its California Action) that CarMax was not just liable since the expiration of the license CarMax had purchased, but also retroactively to September 2012.  *Id.*  It was immediately clear from the meeting that no settlement was possible at that time, and it remained unclear how long eVox planned to hold its threat over CarMax's head.  *Id.*

9

### F.      Procedural History

Seeking judicial resolution of eVox's threats against its business, CarMax filed this lawsuit on the afternoon of May 29.  eVox filed the California Action seeking "not less than $18 million" a week later serving it nine days after CarMax served this action.[1]  *See* Horstman Decl., Exh. 3.

## ARGUMENT

### I.      THIS COURT, AS THE FIRST FILED FORUM, PROPERLY DETERMINES WHICH FORUM SHOULD DECIDE THE TWO ACTIONS.

It is well settled that this Court, the forum of the first filed action, is the proper Court to decide which forum should proceed with these two cases.  *See, e.g., Affinity Memory & Micro, Inc. v. K&Q Enterprises, Inc.,* 20 F.Supp.2d, 948, 954-55, n.11 (E.D. Va. 1998) ("Because this is the first-filed action, the jurisdiction and transfer issues should be decided here first.").  The Rule is the same in California, where eVox's second filed action is pending.  *AGCS Marine Ins. Co. v. Krieger Am. Transp. Co.,* No. 2:12-cv-04608-ODW(FMOx), 2012 WL 3238278, *2 (C.D. Cal. Aug. 6, 2012) (transferring later-filed case; "When applying the first-to-file rule, the second court should assume that the first court will 'appropriately consider the convenience of the parties and witnesses.'" (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 628 (9th Cir. 1991)).  Accordingly, it is appropriate for this Court to consider and rule upon the issues before it, notwithstanding that similar issues may be presented to the Court in California.

### II.     THIS ACTION FOR DECLARATORY RELIEF IS PROPERLY BROUGHT.

eVox does not dispute that a ripe controversy underlies the filing of this action.  Instead, it confuses the purpose of the Declaratory Judgment Act, constructs a flawed theory that would

---

[1] eVox asserts $18 million as the *low end* of what it contends to be available in statutory damages, which the statute pegs at a range from $750 up to $30,000 per work, absent willfulness.  18 U.S.C. § 504.  The high end of eVox's claim would thus be closer to $1 billion.

deny the availability of declaratory relief in any situation, and ultimately provides no good

reason that this Court should decline to exercise its declaratory judgment jurisdiction.

> **A.**   **The First-to-File Rule Dictates That This Action Should be Heard Here and Not Dismissed, Transferred or Stayed.**

The first-to-file rule provides that the Eastern District of Virginia should decide this

action, as CarMax filed here prior to eVox bringing its responsive action in the Central District

of California.  *See Byerson v. Equifax Info. Services, LLC,* 467 F.Supp.2d 627, 635 (E.D. Va.

2006) ("[t]he first-to-file rule states that in all cases of federal concurrent jurisdiction, the court

which first has possession of the subject must decide it.") (citations omitted); *Carbide & Carbon*

*Chemicals Corp. v. United States Industrial Chemicals, Inc.*, 140 F.2d 47, 49 (4th Cir. 1944)

(ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues,

the first or prior action is permitted to proceed to the exclusion of another subsequently filed);

*The Fox Group, Inc. v. Cree, Inc.,* 749 F.Supp.2d 410, 416 (E.D. Va. 2010) ("when two identical

actions are pending at the same time in two federal courts, the first-filed action is generally

preferred, 'even if it is a request for a declaratory judgment.'" (citations omitted)).  The purpose

of this standardized rule is to "promote judicial economy and consistence of results."  *Byerson,*

467 F.Supp.2d at 636 (*citing Reisman v. Van Wagoner Funds, Inc.,* No. Civ. A.02-012-SLR,

2002 WL 1459384 (D. Del. June 7, 2002) (transferring action to forum where related complaint

was filed two weeks prior)).

For the first-to-file rule to apply, "the actions being assessed need not be identical if there

is substantial overlap with respect to the issues and parties." *Id.* at 635-636.  Further, "the fact

that the first-filed case here is one for declaratory judgment should not weigh against retaining

it." *Seattle Pac. Indus. Inc. v. Levi Strauss & Co.*, No. C97-1282D, 1997 U.S. Dist. LEXIS

22579, *5 (W.D. Wash. Dec. 12, 1997); *see also Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d

931, 938 (Fed.Cir.1993) abrogated on other grounds by *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)) ("The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action.").  To depart from the first-to-file rule, there "must [] be sound reason that would make it unjust or inefficient to continue the first-filed action."  *The Fox Group, Inc.,* 749 F.Supp.2d at 416 (citing *Genentech,* 998 F.2d at 937–38); *Volvo Const. Equip. N. Am. v. CLM Equip. Co.,* 386 F.3d 581, 594–95 (4th Cir. 2004) ("the first suit should have priority, absent the showing of balance of convenience in favor of the second action.").  No such reason exists here.

The Virginia lawsuit is indisputably the first-filed action.  *See Genentech*, 998 F.2d at 938 ("[T]he rule favoring the right of the first litigant to choose the forum absent countervailing interests of justice or convenience, is supported by '[reasons] just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.'") (quoting *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 205 (7th Cir. 1959) (alteration in original)).

eVox's later-filed suit contains substantially similar issues to this one, and the core parties—CarMax and eVox—are the same.  *See* Mot. at 2 ("The two actions are substantially similar…").  Both suits involve ***exactly the same set of facts*** concerning the Reseller Agreement, the Transtock/CarMax License, CarMax's use of the images licensed from Transtock, and the 2013 negotiations between CarMax and eVox.  In addition, the legal issues coincide, the central question being whether CarMax has defenses of license, estoppel, acquiescence, and innocence to eVox's claim for copyright infringement.[2]

---

[2] That eVox has also added Lanham Act claims in the California Action does not compromise the substantial similarity between the two suits.  eVox's vague Lanham Act claims are based on the same use of images by CarMax, appearing to allege that CarMax is liable for trademark

eVox's addition of Transtock (and Siracusa) as parties to the California Action does not change application of the first-to-file rule. *First,* the parties need not be identical in both actions for the first-to-file rule to apply. *Byerson,* 467 F.Supp.2d at 636. Those additional parties could just as easily be joined as third party defendants here, where they have consented to jurisdiction. Siracusa Decl. ¶ 16. Allowing their joinder to avoid jurisdiction in this Court would be to reward and encourage forum shopping by the second filer. *See The Fox Group, Inc.,* 749 F.Supp.2d at 416, n. 10 (finding no reason to depart from the first to file rule and transferring to forum where declaratory judgment was filed two months earlier, finding "any forum shopping would be by [the declaratory judgment defendant and second-to-file plaintiff] in filing the suit here two months after the [declaratory judgment] action was filed.").

*Second,* even though it could be joined here if eVox desires, Transtock is not a necessary party to this action. In the *Gabriels* action, which eVox contends has a "similar set of facts" (Mot. at 3), eVox did not sue Chrome, the middleman licensor whom eVox equates to Transtock; eVox only sued the sublicensee, who eVox equates to CarMax. Moreover, in this case, there is no evidence that the claim added against Transtock has merit—i.e., that its agency precluded it from granting licenses surviving its agency, which is the linchpin of the copyright claim against it. Rather, the addition of Transtock seems designed to increase contacts with California in the hope of avoiding venue in the Eastern District of Virginia.

## B.   CarMax Did No Forum Shopping, and the Suit Was Not Filed in Bad Faith.

This judicial district is the obvious choice of venue for CarMax's suit. It is where the

infringement and unfair competition because it included the word "eVox" on images that were so labeled upon delivery. Horstman Decl. Ex. 3, *passim*; McCants Decl. ¶ 5. To the extent such claims could even be actionable, they would nevertheless be dependent upon determination of CarMax's right to use the copyrighted works. *See, e.g., NCR Corp. v. First Fin. Computer Servs.*, 492 F.Supp.2d 864, 867-68 (S.D. Ohio 2004) (finding substantial similarity between suit alleging antitrust violations and suit alleging copyright violations where resolution of either claim would necessarily affect the determination of the other).

witnesses reside and a substantial part of the events giving rise to the claims occurred, including the acts of CarMax and its current and former employees in using the images and negotiating their licenses. *See, e.g., Acterna v. Adtech, Inc.,* 129 F.Supp.2d 936, 939 (E.D. Va. 2001) (in patent infringement cases, the preferred forum is generally "the center of accused activity"); *GTE Wireless, Inc. v. Qualcomm, Inc.,* 71 F.Supp.2d 517, 519 (E.D. Va. 1999) ("as a general rule, 'the preferred forum is that which is the center of the accused activity.'"). Indeed, given that CarMax filed first, in its home jurisdiction, where the relevant witnesses and records are located, and where the alleged infringement occurred, any allegation of forum shopping is absurd. *See Koh v. Microtek Int'l Inc.,* 250 F.Supp.2d 627, 633 (E.D. Va. 2003) (plaintiff's choice of forum is given substantial weight, especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action); *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F.Supp.2d 660, 667 -670 (E.D. Va. 2010) ("plaintiffs' choice of forum is entitled to substantial weight because the Eastern District of Virginia is [plaintiffs'] home forum").[3] As in *Fox,* if there were any forum shopping here, it was by eVox's failing to file its compulsory counterclaims in this first filed action because it desired to litigate elsewhere. 749 F.Supp.2d at 416.

Furthermore, this is not a case in which CarMax brought its suit in bad faith so as to justify departing from the first-to-file rule. *See PRECI-Dip, sA v. Tri-Star Elect. Int'l, Inc.,* Civ. No. 08 C 4192, 2008 WL 5142401 (N.D. Ill. Dec. 4, 2008) (following first to file rule where no bad faith) *citing GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d 1369, 1374 (Fed.Cir.2007) (stating

---

[3] In contrast, in the cases eVox cites, the court found evidence of forum shopping where the DJ plaintiff failed to serve the defendant until after the defendant filed its parallel action (*see Hop-In Food Stores, Inc. v. S&D Coffee, Inc.,* 642 F.Supp. 1106 (W.D. Va. 1986); *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill,* 751 F.2d 801 (5th Cir. 1985)), or the plaintiff filed the DJ action outside its own home forum (*see Mission Ins. Co. v. Purtian Fashions Corp.,* 706 F.2d 599 (5th Cir. 1983); *Serco Serv. Co. LP v. Kelley Co., Inc.,* 51 F.3d 1037 (Fed. Cir. 1995)).

that a suit is filed in bad faith only if "the claims asserted were objectively baseless .... in the sense that no reasonable litigant could realistically expect success on the merits" (quotation and citations omitted)).  eVox has not asserted that CarMax's claims meet this standard, and its own later filed suit based on exactly the same facts precludes any claim that there is no controversy to resolve.

**C.**     **CarMax's Action Was Ripe, Not Anticipatory, and Not Improperly Timed.**

Declaratory judgment is appropriate when "there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Standard Fire Ins. Co. v. Armstrong,* Civ. No. 3:12CV181, 2012 WL 3730644, *3 (E.D. Va. Aug. 28, 2012) (*quoting MedImmune*, 549 U.S. at 127).  eVox concedes that this dispute was ripe for adjudication at the time CarMax filed it.  Mot. at 3.

Instead, eVox now says that its own lawsuit was imminent when CarMax filed.  But eVox does not contend that it ever said so before this action was filed.  Rather, its conduct created uncertainty as to whether or when eVox might find it tactically advantageous to sue rather than to continue hanging threats over CarMax—a situation that fully supports CarMax bringing its declaratory judgment suit.  *Volvo Const. Equip.,* 386 F.3d at 593 n. 12 (threat of future litigation gives rise to actual controversy).  "A district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *Id*.

Here, despite discussions of a license spanning from February 5, 2013 into May, eVox refused, despite repeated CarMax requests, to even frame a demand to cover the allegedly unlicensed period of use.  Sorensen Decl. ¶¶ 26-28.  CarMax had no way of knowing whether eVox would file suit the next day or continue to string CarMax along for months.  In the

15

meantime, CarMax had bare spaces on its website where images once appeared (and continues to have no replacement images). It was receiving threats of massive statutory damage exposure. And it needed to get on with its real business. This is precisely the type of "uncertainty, insecurity, and controversy giving rise to the proceeding" for which a declaratory judgment action is both proper and for which "a district court is obliged to rule on the merits." *See Volvo Const. Equip.,* 386 F.3d at 594.

eVox's insinuation that CarMax misled eVox to believe it would enter into a license and then "raced to the courthouse" is incorrect. eVox does not identify a single misleading word from CarMax, and there were none. CarMax genuinely hoped to negotiate a resolution, through and including the May 29 meeting, only to have eVox present no offer, only outlandish threats. Sorenson Decl. ¶¶ 27-28. As eVox admits (Mot. at 6), it was ultimately unwilling to resolve the dispute as to past use as part of a license, and it never even presented a demand. Sorensen Decl. ¶¶ 23, 26-28. Thus, it was clear that any ongoing license negotiations *could not* resolve the dispute as to prior use, which is the core issue in this litigation, and which uncertainty CarMax seeks to resolve. That CarMax filed first, after negotiations with eVox went nowhere, does not mean CarMax wrongly "raced to the courthouse,"[4] nor does it make this case anticipatory.[5]

---

[4] Ironically, eVox implies that *both* CarMax and eVox were racing to the courthouse, but faults CarMax for being more prepared. Mot. at 15 ("This is not a situation where only CarMax was 'running to the courthouse…'"). But eVox had not informed CarMax it was about to file suit; rather, eVox continued to hold the threat of litigation over CarMax. *Compare Ven –Fuel, Inc. v. Dept. of the Treasury,* 673 F.2d 1194 (11th Cir. 1982) (Mot. at 11) (DJ found to be in anticipation of imminent litigation where government had advised plaintiff it was about to file a claim).

[5] *Compare Samsung,* 386 F.Supp.2d at 713 (patent holder who filed one day *before* manufacturer brought DJ in this district, was rushing to the courthouse—it had previously lost in this district (on findings of unclean hands and invalidity), had *expressly informed* plaintiff of its forum-shopping attempt to "avoid any further litigation in the Eastern District of Virginia," and the case involved issues previously litigated in Virginia); *Yoder v. Heinhold Commodities Inc.,* 630 F.Supp. 756, 760-62 (E.D. Va. 1986) (DJ was anticipatory where plaintiff filed it after receiving a letter demanding plaintiff take a license, with no negotiations). No similar facts exist here.

eVox essentially argues that there is no appropriate time for a declaratory judgment action – that a plaintiff cannot file before a lawsuit is imminent (because there is no ripe controversy), nor after (because a claim is then an anticipatory "race-to-the-courthouse"). The law does not so hold. To deem every suit premised on an "actual controversy" to be "anticipatory" because the declaratory judgment defendant later files its own lawsuit would render the Declaratory Judgment Act a hollow remedy. As explained in *Fun-Damental Too v. Universal Music Group*, No. 97-1595, 1997 U.S. Dist. LEXIS 4784 (E.D. Pa. Apr. 10, 1997), this interpretation

> would place would-be plaintiffs in an untenable Catch-22 – they must wait until there is a reasonable apprehension of suit before filing a declaratory judgment action, but they are (on defendants' theory) automatically dismissed because they filed suit before the putative copyright holder did. If there is to be more than an illusion that a federal forum is to be available for a declaratory judgment plaintiff, the doors to the courthouse must at some point be opened and remain open.

*Id.* at *13-14. The Declaratory Judgment Act exists for a purpose—in part so that one party does not simply have to wait while another party hangs threats of litigation over its head, but instead has a course of relief. This is precisely why CarMax filed this suit.

**D.      eVox Has Not Presented the Requisite "Good Reason" for the Court to Decline to Exercise its Declaratory Judgment Jurisdiction.**

While declaratory jurisdiction is vested in the Court's sound discretion, "a district court must have a 'good reason' for declining to exercise its declaratory judgment jurisdiction." *Standard Fire Ins. Co.*, 2012 WL 3730644 at *2 (quoting *Volvo Constr. Equip. N. Am., Inc.*, 386 F.3d at 594). Good reasons have been found to exist when an action is brought for the purpose of trying issues already pending in another forum, or when a plaintiff has forum shopped. Neither is present here.

**1.      The California Action Was Not Pending When This Case Was Filed.**

eVox misapplies precedent in citing cases that declined to exercise jurisdiction where a

plaintiff had filed the declaratory judgment action only *after* a state court case was already

proceeding involving the same issues and the same or related parties.  In *Aetna Cas. & Sur. Co.*

*v. Quarles,* 92 F.2d 321 (4th Cir. 1937), the plaintiff sought declaratory relief in federal court on

an issue related to a state court judgment against it, seeking to prevent an action to enforce the

judgment against it in state court.  The court held that jurisdiction "should not be exercised for

the purpose of trying issues involved in cases already pending"; that Aetna could not avoid an

adverse state court decision by filing for declaratory relief in federal court; and that comity

considerations applied even if no state enforcement action was yet pending.  *Id.* at 324.  In

*Chang v. Maxwell,* 19 F. App'x 148 (4th Cir. 2001), where the plaintiff sought an order in

federal court "that is the subject of pre-existing [state court] litigation," the court held that this

related party could instead "intervene in the state court action" and comity therefore required

declining declaratory judgment jurisdiction.  In contrast, here, there was no case pending

between these parties when CarMax filed this action—CarMax filed first.  Nor is there any state

versus federal comity consideration at play.

> ### 2.  *Gabriels*, A Different Case Involving Different Parties, Does Not Present the Requisite "Good Reason."

eVox's reference to its suit in California against Gabriels is a red herring.   The dispute

between eVox and CarMax is wholly unconnected to the *Gabriels* case.  The cases involve

different licenses, different courses of conduct, completely different businesses (Gabriels

apparently itself hosts images for third parties to use as its revenue model; CarMax sells cars),

different witnesses and documents, and different factual assessments about infringement,

knowledge, and damages.  At bottom, the present case will turn on CarMax's conduct and

contractual relationships:  was it infringement not to take down the images while negotiating

with eVox during the period after CarMax learned that Transtock had lost its agency and before

eVox ever objected to their use (at which time CarMax removed them)?  Do CarMax's communications with eVox give rise to acquiescence, estoppel, or innocence?  And what use was made of which images at what time by CarMax?  In *Gabriels*, it will be Gabriels' conduct that is at issue.  That conduct, according to the pleadings, involves not just completely different parties but far different facts, including that Gabriels had advance notice that its sublicense was going to expire and had a demand to stop use, but continued to use, display and itself sublicense images to others for ten months thereafter.  Horstman Decl., Exh. 4, ¶¶ 26-34.

There are substantial other differences between the two actions.  In *Gabriels,* eVox allegedly granted a "limited license to use, display and host" images to a third party, Chrome, who was then "permitted to sublicense" the images to Gabriels, which in turn "sublicensed the rights. . . to their various media partners."  Horstman Decl., Exh. 4, ¶ 23-25.  In contrast, here, eVox explicitly designated Transtock as its agent, not a sublicensor—a distinction with significant legal repercussions.  Further, CarMax, unlike Gabriels, did not sublicense anyone.  And while eVox alleges that the cases involve "many of the same copyrights," it does not explain why this should drive venue.  Unlike cases where validity and construction of the same patents may be a critical disputed issue shared in multiple cases, here, it is not the copyrights, but rather the uses of them, that form the dispute.  In all events, the copyright registrations identified in each complaint are substantially different, with *Gabriels* covering a much smaller set of copyright registrations than those at issue here.  Declaration of Laurence F. Pulgram ("Pulgram Decl.") ¶¶ 3-4, Exhs. A, B.  Accordingly, the *Gabriels* case is not sufficiently related to warrant transfer or dismissal of this action.

eVox cites to a standard form order wherein the District Court in California checked a box deeming the California Action a "related case" to *Gabriels*—meaning that *within that*

*district*, both would be heard by the same judge who had *Gabriels* already.  Horstman Decl. Exh.

5.  But that ministerial act has no bearing here, as it was entered prior to any appearance by

CarMax, without briefing or a record, and without reference to, or even disclosure by eVox of

the existence of this first filed action.  *See* Pulgram Decl. Exh. C (eVox's notice of related case,

failing to identify existence of first filed Virginia action).

> CarMax, being unrelated to the *Gabriels* action, did not seek to avoid *Gabriels* or any

decision in that case when it chose to file in its home forum.  Nor could it have done so:  no

decisions have yet been made in *Gabriels,* which is still in its infancy, with a First Amended

Complaint just filed.[6]  Pulgram Decl., ¶¶ 6-7, Exhs. D, E.  eVox has identified no "good reason"

for this Court to decline declaratory judgment jurisdiction, and dismissal is not appropriate.

## III.   THE INTEREST OF JUSTICE AND CONVENIENCE OF THE PARTIES OVERWHELMINGLY WEIGH AGAINST TRANSFER UNDER SECTION 1404.

> Under Section 1404, the Court requested to transfer must consider (1) whether the claims

may have been brought in the Central District of California and (2) whether the interest of justice

and convenience of the parties justify transfer to that district.  *Koh,* 250 F.Supp.2d at 630.  Under

the second factor, the court must consider:  "(1) ease of access to sources of proof; (2) the

convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses;

(4) the availability of compulsory process; (5) the interest in having local controversies decided

at home; (6) in diversity cases [not present here], the court's familiarity with the applicable law;

and (7) the interest of justice."  *Byerson,* 467 F.Supp.2d at 631.  The principal factors to consider

are Plaintiff's choice of forum, witness convenience, access to sources of proof, party

convenience, and the interest of justice.  *Id. (citing Koh,* 250 F.Supp.2d at 633).  To compel

---

[6] *Compare Samsung,* 386 F.Supp.2d 708 (attempt to avoid adverse decisions in prior cases);
*Aetna,* 92 F.2d at 324 (attempting to affect prior litigation between same parties); *Chang,* 19 F.
App'x 148 (pending litigation between substantially same parties, including pending case
reported at *Rei-Jeu Chang v. Maxwell,* 102 F.Supp.2d 316, 318-19 (D. Md. 2000)).

transfer, the movant bears the burden of establishing that the factors weigh strongly in favor of transfer. *See United States v. Douglas,* 626 F.Supp. 621, 626 (E.D. Va. 1985). As eVox has not met this burden, transfer is inappropriate.

### A.    CarMax's Choice of Forum is Entitled to Substantial Weight.

The initial choice of forum "is a privilege given to the plaintiff," and to overcome that privilege, "a movant bears the burden of demonstrating that the balance of convenience among the parties and witnesses is ***strongly*** in favor of the forum to which transfer is sought." *Koh,* 250 F.Supp at 633 (emphasis in original). A plaintiff's initial choice of venue is entitled to "substantial weight" if it is the plaintiff's home forum or the forum bears a relation to the subject matter of the case—both of which are present here. *Id.*; *Heinz Kettler GMBH & Co,* 750 F.Supp.2d at 667-70 (no transfer where plaintiff filed in home forum where its employees with information relevant to the suit were located); *Lugus IP LLC v. Volvo Car Corp.*, No. 3:11CV811-HEH, 2012 WL 1715983, at *4 (E.D. Va. May 15, 2012) (Hudson, J.); *The Fox Group, Inc.,* 749 F.Supp.2d at 416 ("[t]here is a strong presumption that a case should stay in the plaintiff's chosen forum." (*citing Samsung Elec. Co. Ltd. v. Rambus, Inc.,* 386 F.Supp.2d 708, 724 (E.D. Va. 2005))); *Byerson,* 467 F.Supp.2d at 633 ("[s]uch deference [to plaintiff's choice of venue] is especially appropriate where, as here, plaintiffs do not choose a foreign forum or one bearing little or no relation to the cause of action.").

As this forum is both home to CarMax *and* the place where the alleged infringement occurred, CarMax's choice of this forum weighs strongly against transfer.[7]

---

[7] The cases eVox cites against the presumption of the first-filed plaintiff's forum are inapposite. *See Samsung,* 386 F.Supp.2d at 724 (refusing to transfer because first-to-file plaintiff filed in California explicitly to avoid this Court's jurisdiction due to prior adverse ruling); *Yoder,* 630 F.Supp. at 760-62 (refusing to transfer second filed action from Virginia to Illinois because first filed action was anticipatory—filed days after a demand letter that described opponent's intention to sue, without engaging in any negotiations; first filed action sought to avoid prior

## B.   Witness Convenience, Compulsory Process and Access to Sources of Proof Weigh Against Transfer.

"The party asserting inconvenience to witnesses has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Lugus,* 2012 WL 1715983, at *5.  eVox has not met its burden, as it has "not specifically set out their potential testimony, how that testimony will be material and non-cumulative, or the degree to which it will be inconvenient to access that testimony in this district." *Koh,* 250 F.Supp.2d at 636.[8]

eVox's proffer on convenience is feeble at best.  It asserts that its own copies of its copyrighted photographs are located in California.  Mot. at 16.  But the images that allegedly *infringe* eVox's rights were located on *CarMax's* website.  *Acterna,*129 F.Supp.2d at 939 (preferred forum is accused activity); *GTE Wireless, Inc.,* 71 F.Supp.2d at 519  (same).  And the hard drives containing the images sent by Transtock to and used by CarMax are also in Richmond.  McCants Decl. ¶ 7.  Moreover, while digital copies, at either location, are easily transmitted for use as proof at trial (*see Pinpoint IT Serv., LLC v. Atlas IT Export Corp.,* 812 F.Supp.2d 710, 720-21 (E.D. Va. 2011) (for documents in electronic form, "location is entitled to little weight"), the actual physical displays, posters, and other bulky materials taken down from store installations all reside in a Richmond warehouse.  Sorensen Decl. ¶ 19.

eVox next asserts that the negotiations of the Reseller Agreement occurred in California.  Mot. at 16.  But, Transtock's negotiator, Dean Siracusa, resides in Texas.  Siracusa Decl. ¶ 1.

---

adverse ruling of Virginia court rejecting forum selection clause; and Virginia resident could not obtain counsel or afford litigation in Illinois); *Touchstone Research Lab., Ltd. v. Anchor Equip. Sales Inc,* 294 F.Supp.2d 823, 827 (N.D. W. Va. 2003) (DJ action may be anticipatory where plaintiff was on express notice that opposing party was going to file suit imminently).

[8] eVox may not submit new facts on reply, too late for CarMax to rebut.  *See Mercexchange, LLC v. eBay, Inc.,* 467 F.Supp.2d 608, 617-18 (E.D. Va. 2006).

Mr. Siracusa and his company, Transtock, are the only non-party witnesses eVox identifies, and they have specifically agreed to appear and litigate this action in Virginia.  *Id.* ¶ 16.

As to its own employee witnesses, since they may be brought to trial by their employer if needed, they weigh lighter in the balance.  *Heinz Kettler*, 750 F.Supp.2d at 669 (inconvenience to employee witnesses "merits little weight" as compulsory process is not needed to obtain their testimony).  But even so, eVox has not met its responsibility as the party seeking transfer to identify any particular employee witness, nor does it set out his/her potential testimony, how that testimony will be material and non-cumulative, or the degree to which it will be inconvenient to access that testimony in this district.  *Koh,* 250 F.Supp.2d at 636 (finding that "normally, where a movant fails to provide such particularized information, it cannot satisfy its burden to show that the forum is inconvenient for the witnesses.").  Thus, although eVox states that "all the employees" involved in its "standard process of registering" its images are in California (Thompson Decl. ¶¶ 4,5), it does not suggest that those registrations are disputed, nor that any witnesses need come to trial in addition to Mr. Thompson, who is "familiar with EVOX's procedure for registering . . . and ha[s] supervised the process . . . ."  *Id.*  eVox has not identified even one witness that it could not bring to trial in Virginia.

Comparatively, Virginia is the location of all of the CarMax individuals most knowledgeable about its intake and manipulation of the images at issue, the licenses for those images and related negotiations, and the use of the images.  Sorensen Decl. ¶¶ 7-15.  It is that testimony—what images were used, how they were used, when, and why—that will be critical to CarMax's proof as to its non-infringement by estoppel and acquiescence, as to its innocence in the circumstances, and as to the extent, value, and timing of any use of alleged infringement.

Moreover, numerous witnesses reside in Virginia but are non-parties to this suit and

hence could not be compelled to testify elsewhere.  These include Joe Kunkel, the former SVP of CarMax who, since 2007, executed and authorized payment for the Transtock/CarMax License and renewals and who has knowledge of CarMax's underlying marketing strategy and objectives related to the images used on the CarMax website.  Sorensen Decl. ¶¶ 11-12.  Other significant non-party witnesses include Lindsay Abbott (a former Senior Designer on the CarMax.com creative team, expected to be able to testify regarding the extent and type of use of the eVox images by CarMax); Sri Arcot (CarMax technology consultant and outside contractor responsible for building the system on which the images were displayed and for uploading eVox's image to that system, expected to be able to address the circumstances and manner in which the eVox images were placed, stored, copied and displayed on the CarMax website); and Obie Quelland (former lead developer for CarMax's Online Systems team, expected to be able to address CarMax's practices regarding the updating, removal and replacement of any eVox images displayed on CarMax's website).  *Id.* ¶¶ 13-16.  Additionally, testimony may be required from outside vendors responsible for the development, creation or removal of printed CarMax marketing collateral utilizing the eVox images – all of whom are based in or near Richmond. *See* Sorenson Decl. ¶¶ 17-18 (detailing specific witnesses and their expected material testimony).

The existence of these numerous material non-employee witnesses—whom CarMax could not compel to testify in California, but over whom this Court has compulsory process as Virginia residents—weighs heavily against transfer.  *Byerson,* 467 F.Supp.2d at 633-34 ("the availability of compulsory process in this District militates against transfer" where potential non-party witnesses reside in this district); *Heinz Kettler,* 750 F.Supp.2d at 669 (courts give greater weight to the potential inconvenience of witnesses requiring compulsory process).

### C.  <u>Convenience to the Parties Does Not Favor Transfer.</u>

Where, as here, "plaintiffs file suit in their home forum, convenience to parties rarely, if

24

ever, operates to justify transfer." *Lugus IP LLC,* 2012 WL 1715983, at *6 (citing *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253, 1259 (E.D. Va.1988)); *Heinz Kettler,* 750 F.Supp.2d at 668 (citing *JTH Tax, Inc. v. Lee,* 482 F.Supp.2d 731, 738 (E.D. Va. 2007)).  When evaluating convenience of the parties, the logical starting point is the parties' residence.  *Lugus IP LLC,* 2012 WL 1715983, at *6.

eVox resides in California and CarMax resides in Virginia; yet, eVox discusses convenience of parties as if CarMax's Virginia headquarters is irrelevant.  *See* Mot. at 12 ("all of the material witnesses have a presence in California.").  That is patently incorrect.  eVox's attention to the existence of stores in California ignores that the litigation involves CarMax's central administrative functions.  None of CarMax's store employees in California have any meaningful relationship to this action, as all in-store marking campaigns are centrally planned and implemented from Richmond.  Sorensen Decl. ¶ 8.  While it may be more convenient for eVox to litigate in the Central District of California, it is more convenient for CarMax here.

As this District has consistently recognized, transfer is inappropriate where it would merely shift the balance of inconvenience from eVox to CarMax, especially here, where CarMax filed first.  *Byerson,* 467 F.Supp.2d at 633; *Prod. Group, Int'l, Inc. v. Goldman,* 337 F.Supp.2d 788, 799 (E.D. Va. 2004); *Heinz Kettler,* 750 F.Supp.2d at 668 (where defendant's offices, employees and relevant documents were located in California and plaintiff's principal place of business, employees, and relevant documents were located in Virginia, "this factor does not weigh in favor of transfer because it will only serve to shift the balance of inconvenience" from defendant to plaintiff); *Koh,* 250 F.Supp.2d at 637 ; *see also Volvo Const. Equip. North America, Inc.,* 386 F.3d at 594–95 ("the first suit should have priority, absent the showing of balance of convenience in favor of the second action.").  Thus, this factor does not favor transfer.

**D.    Interest of Justice Weighs Against Transfer.**

The interest of justice, which "encompasses public interest factors aimed at systemic integrity and fairness" (*Byerson,* 467 F.Supp.2d at 635), also weighs against transfer. As to systemic integrity, there is no risk of inefficiency or inconsistent judgments from a Virginia venue, as all parties and claims may be joined in this forum, which operates with efficiency.  Further, as discussed in Part II.D.2, *supra*, the *Gabriels* case involves unrelated parties and courses of conduct and will thus will not duplicate this adjudication.

The element of "[f]airness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Byerson,* 467 F.Supp.2d at 635.  Here, CarMax "is a local business and Virginia has an interest in providing a forum for its residents to litigate their disputes."  *Heinz,* 750 F.Supp.2d at 670. CarMax's first to file status also weighs against transfer in the interest of justice.  *Byerson,* 467 F.Supp.2d at 635.  Moreover, "docket conditions, while not a significant factor, favor retaining this case because statistics reflect that this district, on average, provides a speedier trial [than the Central District of California]." *Heinz Kettler,* 750 F.Supp.2d at 670 (comparing statistics).[9]

Finally, although eVox points out that its Reseller Agreement with Transtock has a forum selection clause mentioning California, CarMax is not a party to the Reseller Agreement and is not bound by its terms, which in no way speaks to the convenience of CarMax.  *See* McCants

---

[9] The relative congestion of the docket in the Central District of California favors keeping the case in this District.  In December 2012 there were 706 weighted filings per judge in the Central District of California, and the average time from filing to trial in a civil case was 19 months.  In comparison, there were only 498 weighted filings per judge in the EDVA and the average time from filing to trial in a civil case was only 10.7 months.  Pulgram Decl. ¶¶ 8-9.  Similarly, in December 2012, 597 civil cases (5.5%) of civil cases in the Central District of California were over three years old while only 27 cases (1.4%) of civil cases were over three years old in the Eastern District of Virginia.  *Id.*  The relative congestion of each court, therefore, weighs against transfer.  *See also Koh,* 250 F.Supp.2d at 639-40 (docket congestion militates against transfer).

Decl. ¶¶ 6, 21 (CarMax also did not receive or execute or agree to eVox's End User License Agreement).  Moreover, even as between Transtock and eVox, eVox concedes that "this is a copyright action" not within any contractual forum selection clause.  *See* Mot. at 16, n. 4.  It is only because this is *not* a contract claim that eVox can assert a copyright theory against Transtock.  *Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1122 (9th Cir. 1999) ("before [party] can gain the benefits of copyright enforcement, it must definitively establish that the rights it claims were violated are copyright, not contractual, rights.") (abrogated on other grounds).  Thus, the forum selection clause is inapplicable to this copyright claim, even as between eVox and Transtock.  Further the forum selection clause is also inapplicable because it calls for litigation against Transtock in the courts "of California" (Thompson Decl. Exh. A) rather than "in California"—a term that requires claims to be filed in state court, not federal. [10] That clause therefore cannot govern a copyright claim that is subject to exclusive federal

---

[10] Whereas a forum selection clause that uses the term "in a state" expresses the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, forum selection clauses that use the term "of a state" connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state.  *FindWhere Holdings, Inc. v. Sys. Environment Optimization, LLC,* 626 F.3d 752, 755 (4th Cir. 2010) ("The clause provides that jurisdiction and venue 'shall lie exclusively in ... the courts of the State of Virginia.' As federal courts are not courts 'of' the state of Virginia, the contract language at issue refers to sovereignty rather than geography and limits jurisdiction over the parties' dispute to state court."); *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1081 (9th Cir. 2009) (same; noting "we apply federal law to the interpretation of the forum selection clause"); *Fastmetrix, Inc. v. ITT Corp.,* Civ. No. 1:12cv1291, 2013 WL 428537 at *5 (E.D. Va. Jan. 31, 2013); The Reseller Agreement states that any action arising under the agreement "shall be litigated solely in a court of competent jurisdiction *of such state* [California], county and country."  Thompson Decl., Exh. A (emphasis added).  Such a "forum selection clause which attempts to divest the federal courts of their exclusive jurisdiction to hear this case is void and unenforceable."  *See United States ex rel. B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co.,* 70 F.3d 1115, 1118 (10th Cir. 1995); 28 U.S.C. § 1338(a) (copyright subject of exclusive federal jurisdiction).

question jurisdiction.[11]   The forum selection clause simply has no bearing here.

In light of the factors identified above, the balance weighs strongly against transfer—CarMax filed first in its home forum, which is entitled to substantial deference; the majority of party and non-party witnesses to disputed issues are located in Virginia, and all can be compelled to appear here; the Central District of California is at least as inconvenient for CarMax is the Eastern District of Virginia is for eVox; and the Eastern District is considerably less congested. Thus, eVox has not satisfied its "burden of establishing that the factors weigh strongly in favor of transfer" and its motion should be denied.

## CONCLUSION

In response to a pattern of threats from eVox without proposals for resolution, CarMax properly sought a resolution of the issues in its home jurisdiction, where the allegedly wrongful acts occurred, and where the witnesses may be readily produced for trial.  eVox's decision to file a later action of its own, in its own home forum, does nothing to impugn the propriety of this Court's exercise of  jurisdiction.  Nor does eVox deny that this Court's jurisdiction exists.   For the foregoing reasons, CarMax respectfully requests that the Court deny eVox's Motion and order that this action shall proceed in this forum, along with any compulsory counterclaims that eVox chooses to bring.

---

[11] Even if a forum selection clause *did* apply, it would not be determinative, but rather only one factor in assessing balance of convenience.  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) (forum selection clause is "only one relevant factor").

Dated:  July 1, 2013                    Respectfully submitted,

By: _____/s/ David N. Anthony_____
                    David N. Anthony

DAVID N. ANTHONY (VSB#31696)
TROUTMAN SANDERS LLP
Troutman Sanders Building
1001 Haxall Point
Richmond, VA 23219
Telephone:    (804) 697-5410
Facsimile:    (804) 698-5118
David.anthony@troutmansanders.com

*Of Counsel:*

LAURENCE F. PULGRAM (admitted *pro hac vice*)
ILANA RUBEL (admitted *pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:    (415) 875-2300
Facsimile:    (415) 281-1350
lpulgram@fenwick.com
irubel@fenwick.com

Attorneys for Plaintiffs
CARMAX AUTO SUPERSTORES, INC. and
CARMAX BUSINESS SERVICES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2013, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. I further certify that on the same date, a copy of the foregoing was delivered via electronic mail to the following:

Sten Jensen
James W. Burke
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone:    (202) 339-8400
Facsimile:    (202) 339-8500
sjensen@orrick.com
jburke@orrick.com

Attorneys for Defendant EVOX
Productions, LLC

**OF COUNSEL:**

Kent B. Goss
Valerie M. Goo
Raija J. Horstman
Orrick, Herrington & Sutcliffe LLP
777 S. Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 629-2020
Facsimile:  (213) 612-2429
kgoss@orrick.com
vgoo@orrick.com
rhorstman@orrick.com

Attorneys for Defendant EVOX
Productions, LLC

Dated: July 1, 2013

Respectfully submitted,

_____ /s/ David N. Anthony _____
David N. Anthony, VA Bar #31696
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone:  (804) 697-5410
Facsimile:  (804) 698-5118
Email:  david.anthony@troutmansanders.com

Attorneys for Plaintiffs
CARMAX AUTO SUPERSTORES, INC. AND
CARMAX BUSINESS SERVICES, LLC