## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

CarMax Auto Superstores, Inc., a Virginia
corporation, and CarMax Business Services,
LLC, a Delaware limited liability company,

|                                         |                               |
|-----------------------------------------|-------------------------------|
| Plaintiffs,                             | Civil Action No. 3:13CV345    |
| v.                                      |                               |
| Evox Productions, LLC, a Delaware limited liability company, |        |
| Defendant.                              |                               |

## DEFENDANT EVOX PRODUCTIONS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER (A) DISMISSING THIS ACTION, OR,

## (B) IN THE ALTERNATIVE, TRANSFERRING VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA, OR,

## (C) IN THE ALTERNATIVE, STAYING THIS ACTION PENDING RESOLUTION OF THE CENTRAL DISTRICT OF CALIFORNIA ACTION

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

III.    THIS IMPROPER ACTION SHOULD BE DISMISSED. ........................................... 7

        A.      This Case Should Be Dismissed Because All Wrongful Conduct Occurred
                In The Past. .......................................................................................... 7

        B.      This Case Should Be Dismissed Because It Is Anticipatory. ............................. 8

        C.      Judicial Economy Supports Dismissal. ............................................................ 11

        D.      Dismissal Is Fair To All The Parties ................................................................ 13

IV.     THIS ACTION SHOULD BE TRANSFERRED TO CALIFORNIA. ........................ 14

V.      CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Aetna Cas. & Sur. Co. v. Quarles,*
92 F.2d 321 (4th Cir. 1937) .......................................................................................9

*Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.,*
20 F. Supp. 2d 948 (E.D. Va. 1998) ...................................................................14, 17

*Blagogee v. Equity Trs., LLC,*
2010 U.S. Dist. LEXIS 114233 (E.D. Va. July 26, 2010) .......................................8

*Bluestone Innovations v. LG Elecs.,*
2013 U.S. Dist LEXIS 57124 (E.D. Va 2013).........................................................16

*Bremen v. Zapata Off-Shore Co.,*
407 U.S. 1 (1972).....................................................................................................12

*Calderon v. Aurora Loan Serv., Inc.,*
2010 U.S. Dist. LEXIS 55602 (E.D. Va. June 3, 2010) ..........................................8

*Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc.,*
2013 U.S. Dist. LEXIS 38705 (W.D. Va. Mar. 20, 2013)................................10, 15

*Fox Grp., Inc. v. Cree, Inc.,*
749 F. Supp. 2d 410 (E.D. Va. 2010) .................................................................9, 13

*Genentech, Inc. v. Eli Lilly and Co.,*
998 F. 2d 931 (Fed. Cir. 1993).................................................................................13

*GTE Wireless, Inc. v. Qualcomm, Inc.,*
71 F. Supp. 2d 517 (E.D. Va. 1999) ........................................................................16

*Heinz Kettler GMBH & Co. v. Razor USA, LLC,*
750 F. Supp. 2d 660 (E.D. Va. 2010) ......................................................................16

*Hipage Co., Inc. v. Access2Go, Inc.,*
589 F. Supp. 2d 602 (E.D. Va. 2008) ............................................................ *passim*

*Koh v. Microtek Intl'l, Inc.,*
250 F. Supp. 2d 627 (E.D. Va. 2003) ................................................................14, 15

*Kontoulas v. A.H. Robins Co., Inc.,*
745 F. 2d 312 (4th Cir. 1984) ..................................................................................15

*Learning Network, Inc. v. Discovery Commc'ns, Inc.*,
   11 F. App'x 297 (4th Cir. 2001) ........................................................................8

*LWRC Int'l, LLC v. Mindlab Media, LLC*,
   838 F. Supp. 2d 330 (D. Md. 2011) ..........................................................9, 10, 12

*Mabutol v. Fed. Home Loan Mortg. Corp.*,
   2013 U.S. Dist. LEXIS 42685 (E.D. Va. Mar. 25, 2013) ........................................8

*Publ'ns Int'l., Ltd. v. McRae*,
   953 F. Supp. 223 (N.D. Ill. 1996) ......................................................................9

*Quesenberry v. Volvo Grp. N. Am., Inc.*,
   2009 U.S. Dist. LEXIS 22468 (W.D. Va. Mar. 10, 2009)....................................10

*Ramirez-Alvarez v. Aurora Loan Serv., Inc.*,
   2010 U.S. Dist. LEXIS 132536 (E.D. Va. July 21, 2010) .......................................8

*Samsung Elecs. Co., Ltd. v. Rambus, Inc.*,
   386 F. Supp. 2d 708 (E.D. Va. 2005) .................................................................14

*Seattle Pac. Indus., Inc. v. Levi Strauss & Co.*,
   1997 U.S. Dist. LEXIS 22579 (W.D. Wa. Dec. 12, 1997) ......................................9

*Soroka v. Lee Techs. Servs., Inc.*,
   2006 U.S. Dist. LEXIS 44909 (N.D. Ga. June 19, 2006) .................................10, 11

*Trull v. Smolka*,
   2008 U.S. Dist. LEXIS 70233 (E.D.Va., Sept. 18, 2008)........................................8

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
   386 F. 3d 581 (4th Cir. 2004) ...........................................................................9

*Yoder v. Heinold Commodities, Inc.*,
   630 F. Supp. 756 (E.D. Va. 1986) ...............................................................9, 11, 14

## Federal Statutes

28 U.S.C. § 1404(a) ...............................................................................9, 14, 16

## Rules

Fed. R. Civ. P. 12(b)(6)...............................................................................7, 8

Fed. R. Evid. 1101, 1102 .................................................................................2

EVOX Productions, LLC ("EVOX") submits this reply to CarMax Auto Superstores, Inc.'s and CarMax Business Services, LLC's (collectively, "CarMax") opposition to EVOX's motion to dismiss, transfer or stay this action (ECF No. 20) ("Opposition" or "Opp.").

## I.      <u>INTRODUCTION</u>

There can be no doubt that this declaratory judgment action was filed solely for the purpose of usurping EVOX's choice of forum.  CarMax led EVOX to believe that it would meet in good faith to negotiate a settlement on May 29, 2013.  CarMax knew litigation was imminent in April 2013 when EVOX requested a face-to-face meeting with CarMax's litigators to discuss settlement.  When the May 29, 2013 meeting concluded, having already prepared a complaint for declaratory judgment against EVOX, CarMax rushed to the courthouse to file this action, while the EVOX representatives were on a plane back to California.

EVOX submits that the instant motion should be granted for the following reasons:

- Throughout its Opposition, CarMax emphasizes that it was concerned that EVOX's claim would hang over CarMax's business and that is why it filed a complaint for declaratory judgment.  Opp. at 9.  However, CarMax's complaint does not state a claim for declaratory judgment.  Such a claim is not proper because the alleged wrong (copyright infringement) has already been committed and the damages have already accrued.  A declaratory judgment action will therefore not serve its intended purpose – provide guidance to the parties and allow CarMax to avoid future damages.  CarMax states it has stopped using EVOX's images and stopped committing copyright infringement.

- Declaratory judgment actions are also properly dismissed when the plaintiff engages in procedural fencing.  This is especially true when, as here, the declaratory judgment action is filed in anticipation of litigation in an attempt at improper forum shopping.  The first-to-

file rule is inapplicable when the declaratory judgment action was filed to wrest the choice of forum from the natural plaintiff.

- Even if a claim for declaratory judgment were proper, this Court has complete discretion under the Declaratory Judgment Act to decline jurisdiction. This is even more so applicable here because the action filed by EVOX in California includes all the relevant parties, CarMax, Transtock, and EVOX, as well as broader and more comprehensive claims that will fully resolve the dispute among all the parties (the "California action").

Common sense says that the center of this dispute is California. EVOX is there, Transtock is there, the copyrighted images are there, the contracts between EVOX and Transtock are there, EVOX received payments from Transtock there, and CarMax has a substantial presence in California. And while CarMax makes much of a handful of former employees in Virginia that could provide testimony in the case, the existence of those employees cannot override the substantial justifications for having this dispute heard in California. EVOX respectfully requests that the motion be granted.

## II.    STATEMENT OF FACTS

CarMax has been forced to mischaracterize evidence in an effort to convince this Court that EVOX's straightforward motion should be denied. Rather than provide the Court with a copy of its sublicense with Transtock, it has witnesses characterize what the agreement says.[1] CarMax similarly fails to provide the Court with any document, including invoices, which reflect that its agreement with Transtock was for a two year period.[2] EVOX has never seen the Transtock-CarMax license and had no knowledge that Transtock purported to license the EVOX

---

[1] Such witnesses' testimony violates the best evidence rule and makes EVOX speculate as to what is really in the sublicense that would pertain to the motion. *See* Fed. R. Evid. 1101, 1102.
[2] The witnesses' testimony and characterizations of the documents allegedly proving this fact similarly violate the best evidence rule. *See* Fed. R. Evid. 1101, 1102.

images to CarMax for two years.  *See* Declaration of Barry Thompson in support of Reply ("Thompson Reply Decl."), ¶ 15.  The fact that Transtock and CarMax had <u>never</u> before had a sublicense lasting more than one year makes the 2011 alleged two-year deal suspicious at best. In fact, it is Transtock's own agreement that requires a one-year duration.  *See* Declaration of Dean Siracusa in support of Opposition ("Siracusa Decl."), Ex. A, p. 17, ¶ 4 ("Unless otherwise expressly stated on the front of this Agreement. . . the duration of any license is one year from the date of this Agreement. . . .").

There are certain facts that are undisputed.  In September of 2012, just days before the EVOX-Transtock Reseller Agreement terminated, CarMax wrote to EVOX acknowledging that its sublicense with Transtock expired in December of 2012.  Declaration of Don McCants in support of Opposition ("McCants Decl."), Ex. B.  At the same time, CarMax also knew that EVOX was the owner of the images it had been licensing from Transtock.  *Id.*  It is also undisputed that before the Transtock-EVOX Reseller Agreement terminated, EVOX reached out to CarMax and tried to have them sign a deal directly with EVOX.  *Id.*, Ex. A.  While CarMax professes innocence (inconsistent with the written evidence), the parties can agree that CarMax knew that it had used EVOX's images without a license.  The parties only appear to be disputing how long this knowing infringement lasted.  And while CarMax implies that EVOX "hid in the woods" after the EVOX-Transtock Reseller Agreement expired in September of 2012, the fact is that EVOX made 42 separate attempts to sign CarMax up with a valid license from July to December of 2012.  *See* Thompson Reply Decl., ¶ 5.  Not until February of 2013 did CarMax reach out to EVOX and request a license that was "back-dated" to cover an unspecified period of time for prior uses of EVOX's images.  *See* Declaration of Barry Thompson in support of Motion, ("Thompson Motion Decl."), ¶ 12.  Earlier in September, Transtock had written to

EVOX and stated it had stopped all use of the EVOX images, which EVOX believed included Transtock's clients, such as CarMax. *See* Thompson Reply Decl., ¶¶ 3-4, Exs. B, C. After EVOX learned of CarMax's unauthorized use, EVOX notified CarMax of the infringement. *See* Thompson Motion Decl., ¶ 14; Thompson Reply Decl., ¶ 7.

The parties exchanged draft licenses in March and April 2013. Thompson Reply Decl., ¶ 7. It was clear they had different viewpoints as to how to address CarMax's prior unauthorized use. *See id.* Therefore, in mid-April 2013, EVOX requested an in-person meeting with CarMax's litigators to attempt to settle the dispute. *See id.* at ¶ 8. EVOX was already working with outside counsel on the potential litigation. *See id.* EVOX attempted to schedule the meeting for May 2, 2013. *See id.*, Ex. D. CarMax declined the May 2nd date and asked for information on EVOX's claims. *See id.*, ¶ 9, Ex. D. On April 29, 2013, EVOX again asked for a meeting date and sent CarMax an agenda for the settlement meeting. *Id.* at ¶ 10, Ex. E. This schedule included items for "Documentary evidence" that support EVOX's claim for infringement; "discussion of range of damages;" and "Legal staffing of case for EVOX." *Id.* At this point, CarMax knew litigation was imminent. On April 30, 2013, CarMax finally proposed a meeting date – May 29, 2013. *Id.*, Ex. D. Believing that CarMax was actually interested in discussing settlement on May 29, 2013, EVOX travelled to Virginia and did not file a complaint. *See id.* at ¶ 12. CarMax lulled EVOX into believing that the parties would have meaningful settlement negotiations on May 29th, while it spent "over a hundred hours" on the dispute and "began to prepare a declaratory judgment complaint." Declaration of Robert Sorenson in support of Opposition ("Sorenson Decl."), ¶¶ 25, 27. It appears that CarMax used settlement discussions as a delay tactic to prepare its own complaint, because CarMax knew litigation with EVOX was imminent. At the May 29, 2013 meeting, EVOX informed CarMax of the evidence EVOX

possessed, the range of statutory damages, and the identity of EVOX's outside litigation counsel. *See* Thompson Motion Decl., ¶ 7; Thompson Reply Decl., Ex. E.  In other words, the message was EVOX was ready to go.  CarMax then raced to the courthouse to file its complaint for declaratory judgment while the EVOX representatives were on the plane home.  *See* Thompson Motion Decl., ¶ 18.

CarMax also misstates and misinterprets the EVOX-Transtock Reseller Agreement.  The EVOX-Transtock Reseller Agreement was negotiated and executed <u>entirely in California</u>. Thompson Motion Decl., ¶ 6.  Transtock was not EVOX's agent; according to the EVOX-Transtock Reseller Agreement, "[e]ach party is an **independent contractor**, and neither party may assume or create an obligation or responsibility on behalf of or in the name of the other party."  Siracusa Decl., Ex. A, §7(g).  Moreover, the Reseller Agreement limited Transtock's ability to license the images, because upon termination of the Reseller Agreement, Transtock agreed "to destroy all Images and eVox marketing materials."  *Id.*, Ex. A, §1(b).

CarMax also omits many facts in an attempt to play up the importance of Virginia. CarMax asserts it received the images at issue in Richmond, Virginia, but they were created in <u>California</u>, managed in <u>California</u>, stored in <u>California</u>, and sent from <u>California</u>.  Transtock received all the images at issue from EVOX <u>in California</u>.  *See* Thompson Reply Decl., ¶ 17. The CarMax employees may have been located in Richmond at the time of the negotiation of the Transtock/CarMax license, but CarMax neglects to mention that Mr. Siracusa was <u>in California</u> at the time.  For the following five years, Transtock sent an invoice to CarMax <u>from California</u>

and CarMax sent its payment <u>to California</u>.  Any payment Transtock made to EVOX was made <u>within California</u>.[3]  Thompson Reply Decl., ¶ 18.

Additionally, CarMax implies Mr. Siracusa is a long-time Texas resident.  Opp. at 22. Mr. Siracusa lived in California when Transtock was formed in 2001.  Siracusa Decl., ¶1.  Mr. Siracusa lived in California when the EVOX-Transtock Reseller Agreement was negotiated and executed.  Thompson Motion Decl., ¶ 6.  It was not until after the expiration of the EVOX-Transtock Reseller Agreement – in late 2012 – that Mr. Siracusa moved to Texas.  *See* Declaration of Raija Horstman in support of Reply ("Horstman Reply Decl."), Ex. 7.  In fact, Transtock is still listed as an active California company, and Mr. Siracusa is listed as the agent for service of process at a California address.[4]  *See id.*, Ex. 6.

Communications between CarMax and Transtock or EVOX certainly occurred partly in Virginia, but the EVOX and Transtock participants were in <u>California</u>.  Further, all communication between Transtock and EVOX – two California companies – occurred <u>entirely within California</u>.  And while CarMax personnel interacting with EVOX or directing and executing the removal of images were in Richmond (*see* Opp. at 8), EVOX personnel who create, manage, copyright and distribute these images are located <u>in California</u>.  EVOX also sent

---

[3] However, none of the payment amounts add up.  For the "last" license, CarMax alleges it paid $174,687.00 to Transtock.  McCants Decl., ¶ 9.  Transtock alleges it invoiced CarMax for $202,515.00 for that same license, and that it paid 50% of that fee to EVOX.  Siracusa Decl., ¶ 9. However, in 2011, EVOX received less than half the amount Transtock allegedly invoiced CarMax.  *See* Thompson Reply Decl. ¶ 15.

[4] When EVOX attempted to serve Mr. Siracusa, personally and on behalf of Transtock, EVOX was informed by the current resident that Mr. Siracusa no longer resided at that address. Horstman Reply Decl., at ¶ 3.  EVOX then discovered that Mr. Siracusa had relocated to Texas. *Id.*  The Texas property records reflect that Mr. Siracusa purchased a home in Texas on February 22, 2013.  *Id.*, Ex. 7.  Thus, for all the relevant time periods for this dispute, Mr. Siracusa was a California resident.

the draft license <u>from California</u>, and received CarMax's redlined version <u>in California</u>.  *See* Thompson Reply Decl. ¶ 7.

There is no dispute that in and after March 2013, CarMax had no right to use the EVOX images.  CarMax admits that it now has removed all the EVOX images.  *See* Sorenson Decl., ¶22.  There was and is no "ongoing wrongful conduct."  CarMax's infringement of EVOX's images stopped once CarMax removed the images; therefore there are no "avoidable damages."  The wrongful conduct has been completed and damages have accrued.  CarMax's declaratory judgment action is procedural fencing designed to usurp EVOX's choice of forum.

## III.     **THIS IMPROPER ACTION SHOULD BE DISMISSED.**

This declaratory judgment is improper and should be dismissed.  See Fed. R. Civ. P. 12(b)(6).  "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct **to avoid future litigation**."  *Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008) (emphasis added).  The Eastern District of Virginia has set out the following four factors to decide whether to exercise its discretion to hear a declaratory judgment action when there is no corresponding state court action: "(1) whether the action serves the purpose of the Declaratory Judgment Act; (2) whether the action constitutes procedural fencing; (3) judicial efficiency; and (4) fairness to the parties."  *Id*.  As discussed below, all of the factors support dismissing the case.

### A.     **This Case Should Be Dismissed Because All Wrongful Conduct Occurred In The Past.**

Declaratory judgment is not available in situations where the alleged wrongs have already been committed and the damages have already accrued because "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity."  *Hipage Co., Inc.,* 589 F. Supp. 2d at 615.  It is appropriate to dismiss a declaratory judgment when there is no guidance

that this Court can offer to steer a defendant's conduct away from avoidable damages.  *Id.*  In other words, **if the questionable conduct has already occurred or damages have already accrued, the declaratory judgment is untimely and should be dismissed**.  *Blagogee v. Equity Trs., LLC*, 2010 U.S. Dist. LEXIS 114233, at *19 (E.D. Va. July 26, 2010).  In *Blagogee*, the Court granted a motion to dismiss a declaratory judgment claim pursuant to Rule 12(b)(6) because "the questionable conduct has already occurred, damages have accrued, and the [plaintiffs] have since filed this suit for actual relief."  *Id.*

Some courts dismiss declaratory judgment actions solely on the grounds that it is untimely where "[the] claims and rights asserted have fully matured and the alleged wrongs already suffered."  *Trull v. Smolka*, 2008 U.S. Dist. LEXIS 70233, at *8 (E.D. Va. Sept. 18, 2008); *see also Calderon v. Aurora Loan Serv., Inc.*, 2010 U.S. Dist. LEXIS 55602 (E.D. Va. June 3, 2010) (dismissing declaratory judgment as untimely where alleged wrongdoings had already been suffered); *Ramirez-Alvarez v. Aurora Loan Serv., Inc.*, 2010 U.S. Dist. LEXIS 132536 (E.D. Va. July 21, 2010) (same); *Mabutol v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 42685 (E.D. Va. Mar. 25, 2013) (same).

CarMax admits that it removed all the images and that it is not currently using any EVOX photographs.  Sorenson Decl., ¶22.  The alleged wrong (infringement) has already occurred.  It is undisputed that CarMax had no right to use the EVOX photographs in or after March 2013.  Declaratory judgment will not avoid litigation, as EVOX's claim for damages has already accrued.  Therefore, this action is untimely and should be dismissed.

**B.**     **This Case Should Be Dismissed Because It Is Anticipatory.**

Courts disfavor procedural fencing and routinely decline to exercise jurisdiction over declaratory judgment actions that are brought as preemptive strikes to gain a "home court"

advantage.[5]  *See, e.g., Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 F. App'x 297,

301 (4th Cir. 2001); *Yoder v. Heinold Commodities, Inc.*, 630 F. Supp. 756, 761 (E.D. Va.

1986).[6]  If a declaratory judgment is filed to "wrest the choice of forum from the 'natural'

plaintiff," **it should be dismissed**.  *Hipage Co., Inc.,* 589 F. Supp. 2d at 616 (citing *Publ'ns*

*Int'l., Ltd. v. McRae,* 953 F. Supp. 223, 224 (N.D. Ill. 1996)).  "[The purpose of the Declaratory

Judgment Act] is not to give the alleged wrongdoer a choice of forum."  *Publ'ns Int'l., Ltd. v.*

*McRae,* 953 F. Supp. 223, 224 (N.D.Ill. 1996).  Courts should decline to exercise jurisdiction

over declaratory judgment actions filed "for the purpose of anticipating the trial of an issue in a

court of coordinate jurisdiction."  *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir.

1937).[7]  "[D]eclaratory judgment is not a prize to the winner of a race to the courthouses."

---

[5] CarMax is also wrong in its assertion that a plaintiff cannot "forum shop" if it files in its home forum.  *See, e.g., LWRC Int'l, LLC,* 838 F. Supp. 2d 330.

[6] CarMax's legal authority does not contradict this well-established principal and the facts of those cases clearly distinguish them from the case at hand.  *See Seattle Pac. Indus., Inc. v. Levi Strauss & Co.*, 1997 U.S. Dist. LEXIS 22579 (W.D. Wn. Dec. 12, 1997) (putative plaintiff threatened litigation, did nothing for 10 weeks, threatened litigation again, did nothing for 7 weeks, and then still did not file suit until 6 weeks after the declaratory judgment action was filed); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F. 3d 581 (4th Cir. 2004) (liability was ongoing and the second action was filed five months after the declaratory judgment action); *Fox Grp., Inc. v. Cree, Inc.*, 749 F. Supp. 2d 410 (E.D. Va. 2010) (decided on §1404(a) grounds, patent infringement was ongoing and the infringement action was filed two months after the declaratory judgment action).  In the present case, the infringement is not ongoing and EVOX filed its complaint five business days after CarMax.  Furthermore, the court in *Fox Group* found that there was no indication of inequitable conduct by the defendant, whereas, here, CarMax agreed to conduct settlement negotiations and filed its complaint the same day because it knew a lawsuit was imminent.  *See Fox Grp., Inc.,* 749 F. Supp. 2d at 416.  This case is more analogous to the situation in *LWRC*, where the plaintiff asked for more time for settlement discussions and then filed for declaratory judgment relief the next day.  *LWRC Int'l, LLC v. Mindlab Media, LLC,* 838 F. Supp. 2d 330, 337-38 (D. Md. 2011) (holding pending damages action "good reason" to dismiss first-filed declaratory judgment action).  CarMax alleges after the meeting "it remained unclear how long EVOX planned to hold its threat over CarMax's head," but CarMax did not even wait one day to find out.  Opp. at 9.  Instead, CarMax filed suit the same day as the settlement discussions.

[7] CarMax attempted to distinguish *Aetna* by saying that the declaratory judgment action was filed after a state court case was already proceeding.  Opp. at 18.  However, this misstates the

*Yoder*, 630 F. Supp. at 761.

Thus, courts disregard the first-to-file rule when the declaratory judgment is an anticipatory strike. *Elderberry of Weber City, LLC v. Living Ctrs.-Se., Inc.*, 2013 U.S. Dist. LEXIS 38705, at *11 (W.D. Va. Mar. 20, 2013) ("Although the Fourth Circuit has not stated explicitly that special circumstances may warrant an exception to the first-to-file rule, it has implicitly recognized a special circumstances exception in cases involving procedural fencing or forum shopping."). "[E]xceptions to the rule are common 'when justice or expediency requires.'" *Id.* (quoting *Samsung Elecs. Co., Ltd. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 724 (E.D. Va. 2005). "Courts look with especial disfavor on such preemptive strikes in cases that involve a threat of litigation followed by settlement talks." *LWRC Int'l., LLC v. Mindlab Media, LLC*, 838 F. Supp. 2d 330, 338 (D. Md. 2011). Moreover, the first-to-file rule is ignored when the two actions are filed close together in time. *See, e.g., id.* (ignoring the first-to-file when actions filed 2 days apart); *Soroka v. Lee Techs. Servs. Inc.*, 2006 U.S. Dist. LEXIS 44909 (N.D. Ga. June 19, 2006) (ignoring the first-to-file when actions filed 11 days apart); *Quesenberry v. Volvo Grp. N. Am., Inc.*, 2009 U.S. Dist. LEXIS 22468 (W.D. Va. Mar. 10, 2009) (ignoring the first-to-file when actions filed 3 weeks apart); *Elderberry of Weber City, LLC,* 2013 U.S. Dist. LEXIS 38705 (ignoring the first-to-file when actions filed 1 month apart).

In *LWRC*, the declaratory judgment plaintiff requested additional time before putative plaintiff filed its complaint to seek insurance coverage and discuss settlement, but then filed for declaratory judgment the following day. *LWRC Int'l., LLC,* 838 F. Supp. 2d at 337-39. The court dismissed the declaratory judgment action as anticipatory. Likewise, CarMax knew that

---

procedural posture of *Aetna*. The Court dismissed the declaratory judgment in favor of a <u>third-filed</u> state court action, which was not pending at the time the declaratory judgment was filed.[7] *Aetna Cas. & Sur. Co.*, 92 F.2d at 324-325. Notably, *Aetna* does not even discuss the first-to-file rule. *Id.*

EVOX was prepared to file suit, requested additional time by agreeing to a later meeting date to discuss settlement, but then filed suit **the same day** as the meeting.  CarMax claims that because EVOX attempted to negotiate a settlement, it "had no way of knowing whether eVox would file suit the next day or continue to string CarMax along for months."  Opp. at 15.  But that does not justify its race to the courthouse in anticipation of EVOX's imminent lawsuit.  *See Yoder,* 630 F. Supp. at 760-62 (filing suit after receiving demand for license was anticipatory); *Soroka*, 2006 U.S. Dist. LEXIS 44909, at *17-18 (filing suit after receiving threat of litigation with no deadline was anticipatory).

Here, there can be no doubt that CarMax knew EVOX's lawsuit was imminent if a settlement could not be reached on May 29, 2013.  CarMax knew that EVOX (a) had investigated and documented the infringement, (b) wanted to discuss damages and settlement, (c) had outside litigation counsel, (d) wanted to discuss the issues with CarMax's litigation counsel, (e) was not willing to include past infringement in a standard license, and (f) was trying to set up a face-to-face meeting before filing suit.  CarMax delayed the meeting and used the time to prepare its own complaint.  The facts establish that CarMax raced to the courthouse to file before EVOX in order to secure its preferred choice of forum, disregarding the purpose of the Declaratory Judgment Act and engaging in procedural fencing.  Therefore, this action should be dismissed.

### C.    Judicial Economy Supports Dismissal.

"Judicial economy is not served by trying a controversy by piecemeal, or trying particular issues without settling the entire controversy or interfering with an action which has already been instituted."  *Hipage Co., Inc.*, 589 F. Supp. 2d at 616.  The forum that "provides a broader and more comprehensive forum for resolving the entire dispute between the parties" is the best place to hear the dispute.  *Id.* at 617.  The purpose of a declaratory judgment action is to provide relief

"from the insecurity caused by a potential suit waiting in the wings." *Id*. at 615. "[I]f a suit for

actual relief has already been filed, then the 'insecurity' of looming litigation does not exist." *Id*.

A court "should not entertain declaratory judgment actions for the purpose of trying issues

involved in cases already pending." *Id*. (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.,*

139 F.3d 419, 422 (4th Cir. 1998) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325

(4th Cir. 1937)).

Here, CarMax's declaratory judgment action will not fully and finally resolve all disputes

between the parties. There is a pending action for damages in the Central District of California,

which includes all the relevant parties to the dispute and encompasses all the claims and

controversies among the parties. That is "good reason" to dismiss this declaratory judgment

action. *See LWRC Int'l., LLC,* 838 F. Supp. 2d at 338. The California action is more

comprehensive and includes additional claims not covered by the declaratory judgment action, as

well as both parties, CarMax and Transtock. CarMax's declaratory judgment action does not

include the trademark infringement and Lanham Act claims. CarMax asks this court "for a

declaration that CarMax's license received from Transtock…**was** valid and enforceable," but did

not join Transtock as a party. EVOX, on the other hand, included Transtock as a party in the

California action. If there are related contract claims against Transtock, they cannot be joined in

this action, as the EVOX-Transtock agreement has a governing law and forum selection clause.[8]

*See Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, (1972) (holding forum selection clause

presumptively valid). This will result in piecemeal litigation.

Judicial economy is further served by dismissing this action because of the related

---

[8] For example, it appears that Transtock failed to pay or underpaid EVOX for some accounts,
specifically including the CarMax account. EVOX will need to conduct an audit before asserting
those claims, but they will be claims for breach of the EVOX-Transtock Reseller Agreement,
which must be litigated in California under California law.

*Gabriels* action pending in California.  This is not a red herring, as CarMax claims, because even though the parties are different, both cases will involve similar legal issues.  Transtock was not an agent of EVOX, and so CarMax and Gabriels are in the same situation vis-à-vis EVOX.  Like CarMax, the defendant in *Gabriels* has alleged the right to use the EVOX images because of a license.  Whether that is an appropriate defense to a copyright infringement must be decided in both cases.  Additionally, CarMax's requests for declaratory relief will likely be issues in the *Gabriels* action, *e.g.*, efficacy of EVOX's copyright registrations for its photographs.  The two cases involve many of the same copyrights, and CarMax is challenging those registrations.  Inconsistent holdings could result if this court and the California court reach different decisions on EVOX's copyrights.  Therefore, judicial economy is best served by dismissing this action.

### D.    Dismissal Is Fair To All The Parties

CarMax also asserts that EVOX is attempting to shift the balance of inconvenience from EVOX to CarMax, but there is no added inconvenience to CarMax.  "If this Court orders either a dismissal or transfer of the declaratory judgment action, [plaintiff] will not suffer added inconvenience for the simple reason that [plaintiff] is already a party to the lawsuit in [another forum]."  *Hipage Co., Inc.,* 589 F. Supp. 2d at 617.  Regardless of what this Court decides, CarMax and its witnesses will be required to travel to California unless that suit is dismissed.[9] *See id.*  And because Transtock is already a party to the California action, it makes sense for that case to be the one to proceed.  Thus, this case is readily distinguishable from *Genetech*, on which

---

[9] EVOX does not agree with CarMax's assertion that this Court must determine whether these two disputes will proceed in Virginia or California.  *Fox Group* is one example of a case where the court in the second-filed action is determining where the dispute will be heard.  *Fox Grp., Inc. v. Cree, Inc*., 749 F. Supp. 2d 410 (E.D. Va. 2010).

CarMax relies.[10]  As discussed further below, the convenience of the parties favors the California action.

For all of the foregoing reasons, the Court should dismiss this action.

## IV.    THIS ACTION SHOULD BE TRANSFERRED TO CALIFORNIA.

If this case is not dismissed, it should be transferred to the Central District of California. *See* 28 U.S.C. §1404(a).  The convenience of the parties and the interest of justice support transferring the case.  *See Samsung Elecs. Co., Ltd. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 715 (E.D. Va. 2005).  As discussed above, CarMax's declaratory judgment action was anticipatory and improper and so CarMax's choice of forum is given little weight.  *See, e.g., Yoder*, 630 F. Supp. at 760-62.  The first-filed rule is "usually disregarded" where suits were filed merely days apart.  *See Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998).  CarMax acknowledges that it would be more convenient for EVOX to litigate in California, but asserts that it is more convenient for CarMax in Virginia.  This is just another example of how CarMax's suit was improper in an attempt to wrest the choice of forum from the natural plaintiff.  *See Hipage Co., Inc.*, 589 F. Supp. 2d at 616.  It is equally convenient for each party to bring their own witnesses to trial, so this factor is also given little weight.  *See Koh v. Microtek Intl'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).

CarMax focuses on its actions and asserts that because those actions took place in Virginia, transfer is not appropriate.  However, equal focus needs to be placed on the actions of EVOX and Transtock, which are just as important as CarMax's actions.  EVOX's creation,

---

[10] In *Genentech*, the court decided not to dismiss the declaratory judgment action because it included all of the relevant parties.  Only two of the parties were involved in the second case, so both cases would need to proceed if the Court declined to exercise its jurisdiction over the declaratory judgment case.  *Genentech, Inc. v. Eli Lilly and Co.,* 998 F. 2d 931, 938 (Fed. Cir. 1993).  The converse is true in the present action.  Transtock is not a party to this action, but all three, EVOX, CarMax and Transtock are parties to the California action.  Retaining this case, without Transtock, will result in duplicative piecemeal litigation.

maintenance and copyrighting of all the images takes place in California.  CarMax has requested

declaratory relief regarding EVOX's registrations, and this put EVOX's process of copyrighting

images at issue.  There are a multitude of California residents that work for EVOX involved in

this process.  *See* Thompson Reply Decl., ¶¶ 19-21.  There are also several EVOX employees in

California that had direct involvement with both Transtock and CarMax.  *See id.* at ¶¶ 16-17.

Additionally, EVOX transmitted the images to Transtock in California and Transtock transmitted

the images to CarMax from California.  *See* Thompson Reply Decl. ¶ 17.  All the negotiations

and business relations between EVOX and Transtock occurred in California.  *See id.* at ¶ 2.  In

fact, Transtock is still a registered California company and lists its agent as Dean Siracusa, with a

California address.  *See* Horstman Reply Decl., Ex. 6.  Other Transtock employees appear to still

be in California. *See* Thompson Reply Decl. ¶ 18.  Transtock's involvement further favors

transfer to California, where Transtock and Mr. Siracusa are already parties to the action.  EVOX

could not have brought its action, including its claims against Transtock, in Virginia, therefore it

should be transferred to California.[11]  Moreover, the parties' physical presence favors California.

EVOX has no presence in Virginia, while CarMax has a strong physical presence in California,

including multiple locations in the Central District of California.

    CarMax's assertion that its former employees cannot be compelled in California is also

without weight.  CarMax included the declaration of a current employee, Mr. Sorenson, who

asserts that "[a]ll marketing-related CarMax website content and all CarMax print media are

---

[11] Transtock's and Mr. Siracusa's "submittal" to Virginia jurisdiction is irrelevant and further evidence of CarMax's procedural fencing.  "[T]he Supreme Court has held that after-the-fact consent [to jurisdiction] cannot satisfy §1404(a)'s requirement that a suit 'might have been brought' in the proposed transferee forum."  *Elderberry of Weber City, LLC,* 2013 U.S. Dist. LEXIS 38705, at *18 (citing *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960)); *see also Kontoulas v. A.H. Robins Co., Inc.,* 745 F. 2d 312, 315 (4th Cir. 1984) ("[C]onsent to jurisdiction by a party cannot convert a federal district into one in which a suit 'might have been brought' under § 1404, if venue and jurisdiction requirements were not met at the time the suit was first filed.").

planned, controlled, created and distributed by personnel reporting to me." Sorenson Decl., ¶ 1.

Therefore, any former employees' testimony would be cumulative. *See Koh v. Microtek Intl'l,*

*Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003) ("Inconvenience to a witness whose testimony is

cumulative is not entitled to greater weight."). The material witnesses for CarMax will be Mr.

Sorenson and Mr. McCants, as further evidenced by their declarations in support of CarMax's

opposition, and both are current employees. Cumulative or immaterial witnesses are given little

weight in the transfer analysis and so the Court should transfer the case to California. *See Heinz*

*Kettler GMBH & Co. v. Razor USA, LLC,* 750 F. Supp. 2d 660, 669 (E.D. Va. 2010) ("The

inconvenience to these witnesses is accorded little weight in the transfer analysis because Kettler

International has failed to provide specific details regarding how each witness's testimony will

be material and non-cumulative.").

On the other hand, there are many former EVOX employees who have knowledge and

involvement with the EVOX-Transtock relationship. *See* Thompson Reply Decl., ¶ 17. For

example, Mr. Paul Ratoff is the former EVOX Chief Financial Officer and was directly involved

with the receipt and booking of the payments from Transtock mentioned in the McCants and

Siracusa Declarations. *See id.* Mr. Scott Shipley was EVOX's Vice President and General

Manager at the time the EVOX-Transtock Reseller Agreement was negotiated and has

knowledge of the scope of license granted to Transtock. *See id.* Ms. Marie Garcia distributed

images to Transtock and Mr. Marcus Gillette was a managed contract for EVOX, including the

Transtock contract. *See id.* These individuals are all located in California. *See id.* There are

also former EVOX employees, Mr. Dave Pributsky and Mr. Roger Howard, who were

responsible for the production of images and copyright registrations. *See id.* at ¶ 21. Both still

- 16 -

reside in California.  *See id.*  These former employees of EVOX cannot be compelled to Virginia.

Finally, the interests of justice compel transfer.  Even if the convenience of the witnesses or the parties is not determinative, the interests of justice are sufficient to transfer the case.[12] *Affinity Memory & Micro, Inc.*, 20 F. Supp. 2d at 955.  The pending California action raises the same issues as this case, and more, and arises out of the same transaction as in this case.  "Thus, consolidation is feasible and would afford substantial economies for the parties and the judicial system."  *Id.*

## V.  CONCLUSION

For these reasons, EVOX respectfully requests the Court dismiss this improper declaratory judgment action.  In the alternative, EVOX respectfully requests the Court transfer this action to the Central District of California.  In the alternative, EVOX respectfully requests the Court stay this action pending the resolution of the California action.

---

[12] "[T]he speed of a district's docket is not decisive, and a comparison of docket conditions yields only slight weight for or against transfer in a §1404(a) analysis."  *Bluestone Innovations v. LG Elecs.,* 2013 U.S. Dist LEXIS 57124 (E.D. Va 2013) (transferring case to Northern District of California); *see also GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 520 (E.D. Va. 1999) (transferring case to Southern District of California).

Dated: July 8, 2013                   Respectfully submitted,

                                      By: _____/s/_____
                                           Sten Jensen
                                           VA Bar No. 38197
                                           James W. Burke
                                           VA Bar No. 76551
                                      **Attorneys for Defendant EVOX Productions, LLC**
                                      ORRICK, HERRINGTON & SUTCLIFFE LLP
                                      1152 15th Street, N.W.
                                      Washington, D.C.  20005-1706
                                      Telephone:  (202) 339-8400
                                      Facsimile:   (202) 339-8500
                                      sjensen@orrick.com
                                      jburke@orrick.com

                                      OF COUNSEL:

                                      KENT B. GOSS (CA Bar No. 131499) (pro hac vice)
                                      VALERIE M. GOO (CA Bar No. 187334)
                                      RAIJA J. HORSTMAN (CA Bar No. 277301)
                                      **Attorneys for Defendant EVOX Productions, LLC**
                                      ORRICK, HERRINGTON & SUTCLIFFE LLP
                                      777 S. Figueroa Street, Suite 3200
                                      Los Angeles, CA  90017
                                      Telephone:   (213) 629-2020
                                      Facsimile:    (213) 612-2429
                                      kgoss@orrick.com
                                      vgoo@orrick.com
                                      rhorstman@orrick.com

- 18 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2013, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system.  I further certify that on the same date, a copy of the foregoing was delivered via electronic mail to the following:

David N. Anthony
david.anthony@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone:   (804) 697-1200
Facsimile:   (804) 698-5118

Laurence F. Pulgram
lpulgram@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   (415) 875-2300
Facsimile:   (415) 281-1350

*Attorneys for Plaintiffs*
*CarMax Auto Superstores, Inc. and*
*CarMax Business Services LLC*

Dated:  July 8, 2013                              Respectfully submitted,

                                                  _____
                                                       /s/
                                                  James W. Burke
                                                  VA Bar No. 76551
                                                  **Attorneys for Defendant EVOX Productions, LLC**
                                                  ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                  1152 15th Street, N.W.
                                                  Washington, D.C.  20005-1706
                                                  Telephone:  (202) 339-8400
                                                  Facsimile:   (202) 339-8500
                                                  jburke@orrick.com